. The action stood continued for advisement; and now, at this term, the opinion of the Court was delivered by
Parsons, C. J.
[After stating the substance of the declaration and pleadings.] To the sufficiency of the replication in this case, it is objected that the town, having once legally determined the limits of the school districts therein, had no * author- [ * 536 ] ity afterwards to alter those limits, or to form a new district within the town.
The power of a town to determine and define the limits of the school districts within it, is derived from the second section of the statute of 1789, c. 19; and no authority is expressly given to any town to make any subsequent alteration of the limits, or to form any new districts out of the former districts.
But it seems reasonable that towns should have this authority. As the original division was an experiment, mistakes might have been made, and inconveniences occasioned, which, by a judicious *470 alteration, may be removed. In time, the population or wealth of a particular part of a town may be much changed, so as to require a union or subdivision of existing districts; and if good policy dictated that each town should have the power of forming itself into school districts, the same policy might require that such alterations should be made by such town, as experience or a change of circumstances might suggest.
But this question is not to be decided by a probable construction ; for, by the statute of 1799, c. 66, § 2, this authority in towns is expressly recognized. It is provided, in § 2, that a non-resident may be taxed for his estate in any one district the assessors shall appoint; which appointment shall be recorded by the town clerk; and the estate shall be taxed in the same district, until the town shall be “ districted anew.”
And if the town can form itself into new districts, it must have power to alter the limits of, or subdivide any of the existing districts, without being obliged, no good reason existing therefor, to change the limits of all the districts. We are therefore satisfied that the objection ought not to prevail.
But the principal objection to the replication is, that as the plaintiff does not traverse his living in the particular district, when the vote to raise the money was passed, he was legally assessed to the payment of his proportion of that money ; although he and others, three months before the assessment, had been formed* into and constituted a new district. ' And to support this objection, it has been observed that the act makes it the duty of the assessors to assess the tax on the district in thirty days after receiving a [*537] certified copy of the vote of the * district to raise it; and the tax cannot be assessed but on the district that voted to raise the money.
The case of alteration in districts, after the passing of votes to raise money, and before the assessment, is not expressly provided for in the statute; which it is our duty so to construe, as will be most convenient, and least injurious to the inhabitants of the town. Because it is always to be presumed that the legislature intend the most beneficial construction of their acts, when the design of them is not apparent.
It is not just that a man should, by virtue of this act, be assessed to the payment of money, in the raising of which he could have no agency, or from which he could not (without any fault of his own) derive any benefit. Thus, if he was included within a district, after the vote to raise the money had passed, it is admitted that be could not be assessed to the payment of it; for not being a member of the district when the money was voted, he could have had no voice *471 in the vote. As he may by the act of his town, against his consent, be excluded from the district by which the vote was passed, and included in another before the assessment is made, so he can derive no benefit from the payment of the assessment; and it is therefore unreasonable that he should be assessed. If, by the alteration of the district, a number of persons may be excluded, lessening the numbers and wealth of the district, it would not be reasonable to assess the whole sum on the remaining members, although they alone will have the benefit of it; for they might have refused to pass the vote to raise so large a sum of money.
Suppose that, after a district vote, the district is subdivided into two districts, if the money can then be assessed, for whose use is it to be paid ? The superintending committee are to receive it; but there can be no such committee; nor can the two new districts demand it by the act.
The true and necessary construction of the statute, therefore, requires that the district voting to raise the money should have the same limits when the money is assessed; for, if it has not, it must be considered as a new or different district, and the vote to raise the money is annulled. Upon *this construe- [ *538 ] tian, no injury will be done to any person. If the district, with its new limits, is desirous to raise the whole sum, or a part of it, it may pass a vote for that purpose, and have the money assessed and paid.
But, on the other construction, great injury might arise. If a district had voted to raise money, a part of it might, by the act of the town, be included in another district. If all who were members when the vote passed, must pay the tax to build a schoolhouse, a vote for the same purpose may afterwards be passed in the district in which they have been included, their proportion of which they must also pay. And if the town should include them in a third district before the last assessment, they might be obliged to contribute to the building of a third house; and all this in the space of a few months.
But it may be said that the town, by altering the districts after the money is assessed, may produce the same injustice. We admit it, if the collector can proceed to collect his tax. Because we cannot guard against all possible inconveniences by our construction, it is not to be inferred that we are not to guard against any. But in the case that is supposed, if the district has new limits, so that it is not the same district that was assessed, the authority of the collector to collect should cease; the district voting the money, and entit'ed to receive it from him, no longer existing. ' If a town should occa *472 sion unequal burdens among its inhabitants by districting it anew, after taxes have been voted by some of the districts, and have been assessed and paid, this injustice will result from the abuse of the discretionary power vested in the town by the act, and for which no construction we can give the act will provide a remedy.
But it has been argued that those who were members of a district, when the vote to raise the money was passed, ought to be held liable to the assessment and payment, notwithstanding before the assessment they were included within new districts; upon the same principle that every man inhabiting any town on the 1st day of May, in any year, must pay all the state and town taxes assessed in that town for the year, notwithstanding he may immediately remove from such town.
[ * 539 ] * This argument would have weight, if there were any analogy between the cases. For no man can be holden to pay for his poll, or for the same estate, any state or town tax but in one town during the year. But in district taxes for building school-houses, if the defendants’ construction were to prevail, the same man might, for his poll and the same estate, be assessed in the same year in different districts in the same town, to raise money for like purposes.—There is another distinction. When a man removes from a town, it is a voluntary act of his own. But a man may be included in different school districts even against his will. But the most operative distinction is, that when a town is incorporated out of one or more towns, the former corporations continue with all their powers and duties. But if a new school district is formed out of one or more districts, all the districts, whose limits are anew prescribed, become, in fact, new districts.
Upon the best view of the subject we have been able to take of it, we are satisfied that the replication is good, and that the plaintiff must have judgment.
We have not examined the forms of the pleadings, but have given our opinion upon the merits, as the construction of the act is of general consequence. And it is to be wished that towns, in exercising this power, may act with deliberation and wisdom in originally defining the limits of the districts, and may afterwards allow no alterations, but for substantial and important reasons.

Replication adjudged good.