Mr. Justice Richardson
delivered the opinion of the court.
The question submitted is, whether a marriage settlement, though not recorded, protects the property settled ¿gainst the claims of a creditor who had received explicit notice of the settlement ? This question depends upon the construction of the act of 1785, (P.L. 357,) for recording marriage settlements : and this act is one of those which having but one object in view and purporting to regulate but one subject, the preamble is really important ’and may be justly called, in the figure of Coke, the key to unlock and expose the true intention of the legislature. The preamble is in these words, “ whereas the pratice,' &c. of keeping marriage contracts, &c. in the hands of those interested therein, hath been oftentimes injurious to creditors, &c. who have been induced to credit, &c. such persons under a presumption of their being possessed of an estate subject, &c. to the payment of their just debts.” Here we perceive manifestly, that the mischief to be remedied, was the deceitful appearance of an estate, which induced credit to be given to the ostensible holder, when, in fact, he had no estate whatever ; “for remedy whereof, ” (the preamble continues,) “ and to prevent said deceitful practices, be it enacted that, &c. all and every marriage contract, &c. now existing, after being duly proved, shall *154 be recorded or lodged in the secretary’s office to be recorded,” &c. &c. “ and all that shall hereafter be entered into for securing any part of the estate, real or personal, of any person or persons whomsoever, shall within three months after the execution thereof, be duly proved, in like manner tobe recorded,” &c. Here we find the remedy for the evil complained of, as plainly prescribed, i. e. recording within a given time, ata specified office. For what purpose recorded ? Evidently, to prevent such settlements being thereafter concealed in the hands of those in.tercsted therein ; and to give notice “ to all who might, in the language of the act, bfe induced to credit such persons under a presumption of their being possessed of an estate, subject to their just debts.” The entire end and aim of this enactment is clear and single. It is to guard every person, disposed to give credit, against the deceitful semblance of an estate, by giving them notice of its true situation, and its proper owner. When notice is actually received, the remedy proposed, is substantially afforded, and the end of the law fulfilled. So far the act is explicit, and its purpose manifest. But it goes on to declare as follows “'and in case any person or persons, &c. whomsoever, interested in such marriage deed, &c. shall neglect or refuse to record or lodge the same in the manner or within the times before mentioned, and in the office aforesaid, to be recorded, then the same, in respect to creditors, shall be deemed, and is hereby declared to be fraudulent; and all and every part of the estate hereby intended to be secured to such person or persons, shall be subject and liable to the payment and satisfaction of the debts due and owing by suclj person and persons in as full and ample a manner to all intents and purposes whatsoever, as if no such deed, &c. had been ever made or executed.” The literal import of these words might subject the estate settled to the payment of debts, if the márriage contract be not recorded in the place, manner and time prescribed, notwithstanding actual notice by any-other means. Yet convenience, consistency aud reason, require that we should regard the ob *155 jects of the act, and respect the course of adjudications, upon similar acts. The act before us is, in strict analogy ■to the registering acts, to guard against double mortgages and sales ; and these, notwithstanding their positive enactments, have been uniformly construed so as to give effect to the first deed, though unrecorded, in preference to the second, though duly recorded ; whenever it is clear that the grantee of the second deed had, at the time of the taking it, explicit notice of the former deed. This construction is founded upon the justice, reason and necessity, of preventing a man from making use of an act in order to commit a fraud, which act was intended to shield him against the frauds of others ; and has been uniformly made and adjudged by the judical tribunals which we respect.
In the cases of Le Neve vs. Le Neve, 3 Atk. 649. Shelden vs. Cox, Ambler 624. Tolland vs. Shanbudge, 3 Vesey, J. 478. Clive vs Dodd, 2 Atk. 275. Doe vs. Routledge, 2 Cowper 705, we find the rule fully considered and adopted in the English courts, where it is decided that, though the registry act is positive, that a registered deed shall take place of one unregistered, yet the latter will not .be set aside in favour of ¡one who knew of it at the time.
In Massachusetts, (4 Mass. Rep. 537, Farnsworth. vs. Child,) it is adjudged that the first conveyance, tho’ unregistered, shall be valid against a second purchaser, having notice of the former conveyance.
In New-York, (Jackson vs. Burgot, 10 Johnson, 457,) the Judges say that the second purchase, with actual notice of the prior deed, is held to be fraudulent, and the question of notice and fraud is cognizable .as well in a Court of Law as in a Court of Equity.
In the case of Pierce vs. Turner, (5 Crunch, 154,) the Supreme Court of the United States, in construing the Virginia Registry Act of the 13th December, 1792, for recording marriage settlements and other deeds, decided that a -subsequent purchase with notice of a prio-r unihr *156 corded deed, cannot prevail against the first purchase.
And in the case of Tart vs. Crawford, (1 McCord, 268,) this court, notwithstanding the expressions of the act of 17th March, 1785, (P. L. 38Í,d “ shall be void and incapable of barring the rights of persons claiming as creditors or under subsequent purchases recorded,” came to this conclusion, “ that whenever the subsequent purchaser has received explicit notice of the former conveyance, such conveyance, though unrecorded, will bo valid, legal and effectual against the conveyance of such purehaser, though recorded in due time.”
As this is the first time that the question has arisen under the act of the 8th of March, 1785, for recording marriage contracts, and as there is some difference of opinion, I have noticed the uniform current of decisions under analogous acts. They are so many, and so uniformly proceed upon the same grounds, and have been so far recognized by this court as in my judgment to form a rule for the construction of such acts, not to be departed from, when the act is open to construction. It is a rule not only of good faith, but to restrain bad faith; for if with a knowledge of the marriage settlement, a man will still give credit to the apparent holder of the estate, he cannot do it, upon the presumption that the estate is his, nor unless he intends to defraud the real owners, the cestui que trusts.' A contrary rule, while it professes to prevent a mere legal fraud, would pervert the essential characteristics of the act, and cover direct turpitude under its specific provisions ; it would then be an act, not more to prevent dccéitful practices generally, than to encourage them in certain instances. Upon the whole thenj in the practical application of the provisions of the act .to their proper objects, while we advance the remedy proposed^ which is notice to the creditors, we are not less bound Js> make such a construction as will suppress the entire mischief complained of, so as to detect fraud, whatever cloak it may assume : and assuredly it is not the less worthy of detection, when it seeks to hide itself under tire mantle of *157 tlie law. Drawing therefore the construction of the act from its true intent, with a due regard for respectable adjudications, and a steady eye to the principles of good faith, a majority of the court are of opinion that the actual notice of the marriage contract received by the plaintiff is sufficient to bar his claim upon the estate so settled, simply because from him its true situation was not concealed. The motion is therefore refused, and the postea ordered to be delivered to the defendant.
Martin, for the motion.
Petigru, contra.
Justices Nott, Gantt, Huger and Johnson, concurre^
Colcock, Justice, dissented.