Morton J.
drew up the opinion of the Court. The plaintiff’s claim is founded upon the illegality of the assessment made upon him.
The first objection to the assessment is, that the school meeting at which the money was granted was not legally warned. The return of the freeholder to whom the warrant *215 was directed, bears date on the day appointed for the meeting ; and states that he had “ warned all the legal voters ” in the district “ to meet at the time and place and for the purposes within mentioned.” When the selectmen direct a warrant for calling a school district meeting, to a proper person, he is made a returning officer for that occasion, and all his acts done in pursuance of such special authority, are to be treated like those of other returning officers. The returns on warrants for town, district, or other corporate meetings may sometimes be treated with greater lenity than returns upon writs and other judicial precepts ; but the principles applicable to both are essentially the same. Lancaster v. Pope, 1 Mass. R. 86; Davis v. Maynard, 9 Mass. R. 243.
All returning officers are ministerial and are bound to set forth in their returns all the acts by them done, that the proper tribunal may judge of their sufficiency. They are not competent to judge of the legality of a notice or service, and a return that a precept had been legally served, or that the duty enjoined by a warrant had been duly performed, would most clearly be insufficient. But in this case the return does not even state that the voters had been duly or legally warned.
The law (St. 1799, c. 66, §4, and St. 1826, c. 143, § 14,) requires that warrants for school district meetings shall be served by giving personal notice to, or leaving a written notification at the usual place of abode of every legal voter in the district. The term warned, according to its common use and acceptation, implies that notice had been given, but whether by posting up copies of the warrant, in some public places, as is usual in other cases, or in one of the modes prescribed by the statute, is left entirely uncertain. Either of the three modes would satisfy the usual import of this term.
The statute further requires that the notice 'shall be given seven days before the time appointed for the meeting. All that can fairly be inferred from the language used is, that notice had been given before the return was made. The person making the return says, “ I have warned,” but whether one or seven days before the meeting, he does not state. The return would not be false if the notice had been given but a single *216 day before the meeting, or if it had been given by posting notifications, instead of personal notice.
The case of Thayer v. Stearns et al., 1 Pick. 109, is clearly distinguishable from this. There the money had been legally granted, and fairly assessed. The only question was whether the assessors had been legally chosen. Under all the circumstances of that case, the Court held that the assessors were not liable to an action of trespass. If the defective warning had related to the meeting at which the money xvas granted, it would have stood on different grounds and might have received a different decision. If in the case at bar the money had been legally voted and the defective return applied to the warrant for the meeting when the assessors were chosen, it would have presented a different question. It is also to be recollected, that the return now under consideration is much more defective than the one in the case cited.
The return of the officer is the only competent evidence of the service of the warrant. And as it does not appear from this evidence, that the inhabitants of the district xvere notified in the manner or for the length of time required by laxv, the meeting was not legally holden ; and the proceedings were invalid. As the defect appears of record, the assessors might have known it and refused to assess the tax.[1]
But this error is one which may be remedied, if the facts will admit of it, by an amendment of 'the return. Welles v. Battelle, 11 Mass. R. 477. We will therefore proceed to examine the other objections to the validity of the assessment.
In 1807 the inhabitants of Dover undertook, in pursuance of the statute 1789, c. 19, § 2, to “ determine and define the limits ” of their school districts. They appointed a committee who made a report which was accepted by and became the act of the district. This report geographically designated the east and west districts, and provided that each should include all the inhabitants upon its respective territory. Then comes the following language : “ H. T., B. T. and S. C. to have liberty to send their children to school in the westerly part of *217 Dedham. I. L., S. P. and J. M. to have liberty to send their children to the first school in Natick. E. A. and J. N. to have liberty to send their children to the north school in Medfield. All other inhabitants of said district (of Dover) to belong to the centre school in said district.”
What is the true meaning of this language ? Ml other inhabitants, 8fc. Other than whom ? Who are excluded from the centre school ? Clearly the individuals first named ; and doubtless all the inhabitants included in the east and west districts.
Towns can execute the power given them to “ determine and define the limits of school districts,” only by geographical divisions of their territories. Withington v. Eveleth, 7 Pick. 106. If the words “ all other inhabitants” had immediately succeeded the formation of the other two districts, as suggested by the defendants’ counsel, we think the districting might have been sustained. Although the expression naturally refers to individuals ; yet taken in connexion with the other parts of the report, it might properly be understood to extend to the remaining territory, as well as to the inhabitants residing upon it; and thus to form a third geographical district.
But we are bound to take the report as it was adopted. And we can no more change the arrangement of the words and sentences, than we can change the words and sentences themselves. And according to the obvious as well as the grammatical construction, it is quite as clear that the individuals named were to be excluded from “ the centre school,” as that the inhabitants of the other two districts were to be excluded. Under this construction it can hardly be said that a territorial district was formed. None was defined by metes and bounds. It was not provided that all the remaining territory should form the centre district. But certain individuals were to compose the district, and if it included their estates, the territory would change with every change of their estates. The principles of the case of Withington v. Eveleth apply to this part of the case at bar.
But even if we could construe this act of the inhabitants of Dover so as to establish a territorial district, yet the individuals named would necessarily be excluded, as we have *218 before seen ; and for this cause the districting would be invalid.
Towns, in executing the power to form school districts, are bound so to do it, as to include every inhabitant in some of the districts. They cannot lawfully omit any and thus deprive them of the benefits of our invaluable system of free schools.
In whatever light, therefore, we view this subject, we are brought to the same conclusion. If the district was not legally established, the assessors could derive no authority from it to make the assessment. If it was legally established, yet the plaintiff was not included in it, and therefore could not rightfully be assessed.
But it is contended, that if the plaintiff and his associates were not included in the original district, yet that they were annexed to it by the vote of 1819. The power of towns to dividé or alter old districts or to form new ones is unquestionable. Richards v. Daggett et al., 4 Mass. R. 534. But this, if done at all, must be done absolutely. The same persons cannot belong to one district for one purpose and to another for a different one. The vote was, that certain persons, among whom was the plaintiff, “ be included in the centre district fo*■ building their school-house, ” and that certain others “ be exempted from said district.” The district of Dover had no power to form districts or to annex citizens to districts already formed for special purposes. Towns may define the limits of school districts ; but the law determines the rights and duties of the inhabitants of them when they are established. This vote therefore, whether considered in reference to the annexation of the plaintiff and others to the centre district or to the exemption of S. C. and others, was unauthorized and ineffective. But if it could not operate to annex the plaintiff to the centre district, a fortiori, it could not give validity to a districting which before was inoperative and void.[1]
According to the agreement of the parties, the defendants must be defaulted and judgment be given for the plaintiff for *219 the amount of the tax which was collected of him and for costs.
The general question, whether a town is liable to an action for money collected on an illegal assessment upon a school district, is not raised in this case, nor was it alluded to in the arguments of counsel on either side. Their object seemed to be to try the validity of the assessment, unembarrassed with any formal or technical objections. And it might as well be tried in this action as any other. It may however be proper to remark, that it is not easy to see how in ordinary circumstances such an action could be sustained. By St. 1826, c. 143, § 11, the collector is required to pay over the money when collected, to the town treasurer ; but the latter receives it as the agent of the district and holds it subject to “ the disposal of the committee of the district.” The town have no control over it, and the treasurer would not be justified in paying it away by their order. It would therefore seem that it could not be considered in the possession of the town, and that they should not be in any way responsible for it. Little v. Merrill et al., 10 Pick. 543.
It is however expressly agreed by the parties in this case, that the money collected of the plaintiff “ came into the treasury of the district of Dover.” It was not legally there. The district had no right to retain it. And it having been taken from the plaintiff without his consent and without legal authority, he is entitled to recover it back.[1]

 But see Houghton v. Davenport, 23 Pick. 237; Briggs v Murdock, 13 Pick. 305

 See Rev. Stat. c. 23, § 24, 49 et seq.; Allen v. School District No. 2, in Westport, 15 Pick. 35; School District No. 1, in Stoneham v. Richardson, 23 Pick. 67

 See Rev. Stat. c. 23, § 38 et seq.; Williams v. School District No. 1, in Lunenburg, 21 Pick. 75. The remedy of an instructer of a district schorl for his wages is by an action against the town, and not against the district. Clark v Great Barrington, 11 Pick. 260.