## The Inhabitants of School District No. 1. in Stoneham versus Benjamin F. Richardson.

When a town abolishes the school districts and forms new ones, the legal title to the existing school-houses vests in those of the new districts within whose territory they happen to fall.

And this principle was applied in the case of a wooden school-house built by a district, which was abolished and the territory of which became parts of two new districts, on land occupied by the district under a parol lease, the rent whereof had not been paid.

Where an action was brought in the name of a school district not duly organized, and while it was pending the district organized itself legally and ratified the prosecution of the action, the ratification was held to be valid and effectual.

Trespass *quare clausum*, and for taking and carrying away the plaintiffs' school-house in Stoneham. The action was entered in the Common Pleas, at June term 1837.

At the trial, before *Morton* J., on the 20th of December, 1837, the defendants read a paper filed in the Common Pleas on the second day of the return term, wherein the authority of the counsel for the plaintiffs to appear in the action, was denied. This objection was made on the grounds, that the plaintiffs had never been legally organized as a corporation, and, that if they had, they had not authorized the suit. The counsel contended that their own statement of their authority was sufficient, but the judge required them to prove both of those facts.

They then produced the town records, by which it appeared, that in 1826 the town was divided into four school districts, one of which was called the Northwest district. In April 1836, the town was divided into six districts, called the Northwest, Northeast, &c. districts, but this division was not by geographical lines ; (and consequently not legal, *Withington* v. *Eveleth*, 7 Pick. 106 ;) and in May following the town was divided into six new districts by geographical lines, the districts being called No. 1, No. 2, &c. The town voted also, at the same meeting, "to annul all votes passed respecting dividing the town for schools, prior to this date."

The school-house in question fell within the limits marked out as the district No. 1, in the new districting, and which nearly coincided in its limits with the Northwest district of 1836. Before this it was the property of the old Northwest district, formed in 1826.

The counsel then produced a book of records which they called the records of the district No. 1. The first record of a meeting was of "the inhabitants of the *N. W. school district,*" on April 21st, 1836. At this meeting Reuben Richardson, junior, was chosen district committee ; and it was voted that future meetings should be warned by posting up a copy of the warrant at the meetinghouse. Subsequent meetings of the district No. 1, in 1836 and 1837, were warned and held, in pursuance of this vote and in virtue of warrants signed by R. Richardson, junior, as the committee of the district No. 1, (though in fact he had only been chosen the committee of the Northwest district formed in 1836,) and consequently were not legal meetings. At these meetings votes were passed to choose committees, and to give them instructions to demand of the proper persons the property of the district, and if necessary, to take legal measures for the recovery of the property.

At a meeting of the district No. 1, on the 15th of December, 1837, being the first meeting that was legally called and warned, the district officers were duly elected ; and it was voted "to prosecute the suit now pending in the Supreme Judicial Court, in favor of the district, against Benjamin F. Richardson, and to choose agents for that purpose." Three agents were then chosen. And a vote was passed directing the mode in which future meetings should be warned.

It was proved that the territory which composed the old Northwest district is the same which now makes the district No. 1, and a part of the district No. 6. The school-house stood on land hired of one Hay, by a parol lease, by the old Northwest district. There was evidence that this district, at the time of the new districting, owed a small sum for rent of the land, &c. ; that a small sum was due to them from one Wiley ; and that the clerk had about twenty cents of their money in his hands.

The defendant produced the records of the old Northwest district, from which it appears, that after the districting of May 1836, that district held a meeting, viz. in August 1836, at which it was voted "to sell all of their district property." A committee of two was chosen for that purpose and to settle

School District No. 1, in Stoneham, v. Richardson.

all their unsettled business, and a committee of four, to make a distribution of their property.

It was proved also, that in pursuance of these votes, the school-house was sold by auction, on the 13th of September, 1836, to one Hill, for $135 ; that Hill sold it to the district No. 6 for the same sum ; that the defendant, as one of a committee of the district No. 6, assisted in removing it ; which is the supposed trespass for which this action is brought; and that the committee of the old Northwest district, so chosen to divide their property, had offered to divide the money received from the sale of the school-house, amongst all the inhabitants of that district, according as might be lawful.

Reuben Richardson, junior, who was chosen, in April 1836, the prudential committee of the Northwest district formed in 1836, testified that he hired a schoolmistress subsequently to the last districting, and that the school was kept by her in the school-house on the day on which the auction took place.

Upon these facts the defendant contended,

1. That there was no such corporation as that in whose name the suit is brought ; certainly not at the time when the action was commenced ; and that the organization of the district in December 1837, did not cure the difficulty.

2. That the plaintiffs were not a legal corporation at the time when the supposed trespass was committed ; and so they had no property in the school-house ; and no trespass could be committed against them when they had no legal existence.

3. That the district No. 1, was never legally organized before December 15th, 1837, (if it was then,) which was five. days only before the trial.

4. That the corporation, if it existed, did not authorize the suit.

5. That as the school-house was, before the last districting, the property of the old Northwest district, it continued in them and never passed to the district No. 1, and that the old Northwest district had good right to sell it as they did.

The judge reserved all the questions of law arising upon these facts, and put the case to the jury upon the question of damages. Many witnesses were examined on this question and a verdict was returned for the plaintiffs for the sum of

§ 260.  The defendant moved for a new trial, on the ground that the damages were excessive and against the weight of the evidence.

*Choate* and *Crowninshield*, for the defendant.  This is in reality a controversy between the old Northwest district and the new district No. 1, to try the title to the school-house. The old district was not, to all purposes, dissolved by the vote annulling all former districtings.  It was possessed of property and owed debts, and it might lawfully sell its property and pay its debts, and hold meetings for the settlement of its affairs; nor could the town dissolve it without its consent.  *Waldron* v. *Lee*, 5 Pick. 332.  If the district No. 6 had been set off from the old Northwest district, the defendant would have had no case; the property would have remained to the old district; but as the vote was, that all the previous districtings should be annulled, No. 1 is as much set off as No. 6.  The plaintiffs, being an aggregate corporation, cannot be successors to the old district.  Whether therefore the old district still exists or was dissolved, the plaintiffs have no right to the property in question.  *Richards* v. *Daggett*, 4 Mass. R. 534; *Dillingham* v. *Snow*, 5 Mass. R. 554; 2 Kent, (3d ed.) 309.

At the time when the action was commenced, the plaintiffs were not a corporation, and could not maintain any action. They had not then organized themselves, and by possibility they never would do so, for the town might have been districted anew.  Revised Stat. c. 23, § 24.  An acceptance of a charter is necessary, even in the creation of a municipal corporation.  Angell & Ames on Corp. 47.

*Greenleaf* and *Farley*, *contrà*, contended that the plaintiffs were a corporation at the time when the action was commenced, and consequently might maintain an action; that the school-house belonged to them; and that they had ratified the prosecution of the suit.  In supporting these positions they remarked, that the general object of the statute is to provide for public education.  It is the duty of the town to have school-houses erected or provided.  A school district is the creature of the town, and may be abolished at its pleasure.  *Richards* v. *Daggett*, 4 Mass. R. 534; *Allen* v. *Westport*, 15 Pick. 35.  There

School District No. 1, in Stoneham,

*v.*

Richardson

June 29th, 1839

School Dis-
trict No. 1,
in Stone-
ham,
v.
Richardson.
is a limitation on this power of the town, only in regard to third persons between whom and the district a contract subsists. *Waldron* v. *Lee*, 5 Pick. 330, 331. The district can hold property only for the purposes of a school. Revised Stat. *c.* 23, § 58. It cannot sell the property in order to divide the money among the inhabitants of the district, for their individual use ; misconduct of that sort would render it liable to the town. The town, in certain cases, may lay a tax upon the district, and all district taxes, whether voted by the town or the district, are assessed and collected by town officers. Revised Stat. *c.* 23, § 28, 37, 44. The district is a public corporation. All who reside on the territory are members, *nolens volens*. *Withington* v. *Eveleth*, 7 Pick. 106. The property of the district is a trust estate, the district being the trustee and the town the *cestui que trust*. *Dartmouth College* v *Woodward*, 4 Wheat. 518 ; *Philips* v. *Bury*, 2 T. R. 352 ; *Overseers of Pittstown* v. *Overseers of Plattsburg*, 18 Johns. R. 418 ; *Grant* v. *Fancher*, 5 Cowen, 311. The annihilation of the district operates as a conveyance of the estate to the town. Cruise's Dig. *tit.* 12, (*Trust*,) *c.* 4, § 5, 6 ; *tit.* 12, *c.* 1. § 70, 71 ; *Mayor of Coventry* v. *Att. Gen.* 7 Bro. Parl. Cas. 235. A trust attached to this property, and it being a public trust, the defendant had notice of it and he cannot avoid it. The estate did not *escheat*, because of the trust, and because it was personal property, and because the possession was not vacant. *Barclay* v. *Russell*, 3 Ves. 430 ; *Burgess* v. *Wheat*, 1 Eden, 177, 201, 241, 246, 253, 259 ; *St.* 39 and 40, *Geo.* 3, *c.* 88, § 12 ; *St.* 1798, *c.* 43 ; Revised Stat. *c.* 108, § 8, 9 ; Co. Lit. 13 *a* ; *Wells* v. *Banister*, 4 Mass. R. 514. It clearly could not revert to the donors, the individuals who paid the taxes. The school-house must belong to the town until it is conveyed to a new trustee. The town may hold in itself both the legal and the equitable title, or it may distribute them between itself and the district. On the creation of a new district within which the school-house happens to lie, the district becomes the trustee. The statute provides that the district may prosecute and defend actions relating to its property, and consequently it must have the legal title ; otherwise it would be indifferent whether the district should be considered the trustee and the town the

*cestui que trust* or *vice versâ.* No organization and no consent
of the plaintiffs was necessary to establish the plaintiffs as a dis-
trict and to vest the property in them, and enable them to bring
the action ; but the ratification of the prosecution after they
had duly organized themselves and before the trial, was suffi-
cient to sustain the action, if any ratification was necessary.
*Hampshire* v. *Franklin*, 16 Mass. R. 86, 87.

School Dis
trict No. 1,
in Stone-
ham,
*v.*
Richardson.

*Crowninshield*, in reply. The rights of a third person were
concerned in this case, the owner of the land having a claim
against the old district for rent ; consequently the town could
not destroy the district and thus impair the obligation of the
contract.

There are difficulties in the way of considering the property
as held in trust. Suppose there are six districts, each having
erected its school-house, and the town reduces the number of
districts to four ; if the two supernumerary houses belong to the
town, it interferes with the principle of equality of taxation.
Or suppose a district formed out of the parts of two towns
(Revised Stat. *c.* 23, § 49) to be dissolved, what will become
of the school-house ; will it belong wholly to one of the towns,
as *cestui que trust*, or if to both, in what proportion will they
hold ? Suppose a gift of real or personal estate to a school
district ; will the town hold it for a new and different district ?

MORTON J. delivered the opinion of the Court. The
several towns in this Commonwealth are required by law to
maintain suitable schools for the due instruction of the children
of all the citizens thereof. Revised Stat. *c.* 23. And the
more effectually to accomplish this important object, they are
authorized to divide the territory of which they are composed,
into such school districts as they shall judge best adapted to
the purposes of education. · The towns also have power from
time to time to form new districts, and to divide or alter the
limits of old ones. Revised Stat. *c.* 23, § 24 ; *Richards* v.
*Dagget*, 4 Mass. R. 534 ; *Allen* v. *School District No. 2 in
Westport*, 15 Pick. 35.

*Oct. 16th,
1839.*

School districts, which are corporations for certain purposes,
are authorized to purchase or build and to hold school-houses
and other property. § 28.

But school districts are corporations not only very limited

in their powers, but also of precarious existence. § 57, 58 They may not only be varied and modified in the extent of their territorial limits, but also annihilated, by a body over which they have no control. The alteration of a district, by increasing or diminishing its size, would not destroy its identity or affect its rights of property. But when old districts are abolished and new ones formed, it may sometimes be difficult to determine who are the successors of the old corporations, and in whom their property vests.

In new districting towns it may happen that more than one school-house will fall within the limits of some districts, while others are left without any. So also the mere alteration of the extent of the districts may produce the same result. In the latter case, as the identity of the corporations would remain, it would seem that the property would not be divested, although the school-house, by the newly assigned limits, might fall without the territory of the district and thus be rendered useless for the purpose for which it was made.

But when there is an entire new districting, the formation of the new corporations is necessarily an annihilation of the old ones, the two being incompatible. And it is a point of some difficulty to determine who shall succeed to the property of the extinct districts. It is said that "at common law one corporation aggregate cannot be the successor to another aggregate corporation." *Dillingham* v. *Snow*, 5 Mass. R. 554 ; 2 Kent, (2d ed.) 309.

The legislative action upon this subject appears to be imperfect and defective. The matter is involved in difficulty and obscurity, and many things are left to inferences, some of which must be quite remote. Having no definite rule in legislative enactments or adjudged cases to guide us, we are compelled to settle the question by such lights as we may derive from analogy. And we must, as far as we can understand it, be guided by the spirit and object of the legislation upon the same and similar subjects.

It must be presumed that the legislature intended that school-houses should continue to be used for the purposes for which they were erected, and as they can be thus used only by the districts in which they are situated, it furnishes a strong inference that in the regulation of this matter, the

legislature intended to substitute the new district into which the house happens to fall, for the old district to which it before belonged.

The power of towns to form new districts at their discretion, necessarily implies the power of abolishing the old ones. And as these corporations are brought into existence without the volition of their members, embracing every one within their limits, *nolens volens*, so they may be abolished without the consent and against the wish of all the members.

Towns are bound by law to support schools, and as a necessary incident, to provide suitable school-houses ; and are liable to punishment for a neglect of this duty. Not so with districts. Although they have authority to hire, buy or build houses, and to raise money for the purpose ; yet they are not liable to any penalty for an omission to do it. When a majority of a district refuse to provide a proper house, the town, on the application of the minority, may compel them to do so. But unless five or more make the application, the town has no power to act in the matter.

When a school-house is erected by a district, the legal title vests in the district. But the district may be considered as holding the property in trust for the town or its inhabitants. And when the town abolishes one district and creates another, the property immediately vests in the new district, as property holden in trust passes from one trustee to another, when one dies, resigns, or is removed, and another is appointed in his stead. If any time elapsed between the abolition of one district and the establishment of another, the legal title of the property might be said to vest in the *cestui que trust* or to lie in abeyance. But such a case can hardly be supposed to exist, for the formation of the new districts is the annihilation of the old ones. The same act of the town accomplishes both objects simultaneously. Whenever therefore a town forms new districts, by abolishing the old ones, the legal title to the existing school-houses vests in those of the new districts within whose territory they happen to fall.

If this construction of the law invests towns with important and arbitrary powers, it may be said that it is incident to the power of regulating the school districts and is no more likely

*School District No. 1, in Stoneham,*
*v.*
*Richardson,*

School District No. 1, in Stoneham, *v.* Richardson.

to be abused than the authority to dispose of school-houses in any other way. There is very little danger that it will be used unreasonably or oppressively. The inhabitants of the several districts compose the town and have a common interest to manage the subject fairly and equitably. And the liability of the town to see that school-houses are provided is a guaranty for the fair and faithful exercise of this authority.

The above reasoning applies only to cases where towns form new districts. By the 24th section of the statute above cited, towns are vested with a discretionary power to erect school-houses and support public schools either with or without school districts. As all the towns in the State must be presumed to have been divided into districts, when this act passed, a strong and irresistible implication arises, that it was intended to apply to towns which were already districted, and to authorize the abolition of existing districts and the execution of the law in such towns without the aid of districts. Should a town discontinue the districting system altogether, it may not be easy to determine to whom the existing school-houses would belong. Probably the town would have a right to hold and use them for the purposes for which they were erected ; and if the inhabitants deemed it expedient, to remove or dispose of them.

The application of the above principles to the case at bar is easy. In 1826 the town of Stoneham was legally divided into four districts. In 1836, after one unsuccessful attempt, the town was again legally districted. The four old districts were abolished and six new ones formed in their stead. The school-house in question, being within the limits of the district No. 1, became its property. The old district, having ceased to exist, could hold no meeting nor do any other valid act. Its attempted sale of the house was a nullity, and could give to the purchaser no property nor authority to remove the house. The defendant's interference with it was a trespass.

The former organization of the new district seems to be irregular and illegal, and if the authority to prosecute this suit depended upon the votes under that organization, it would be very doubtful whether they could be sustained. But the ratification, by the district after it was duly organized, of all the previous acts in the prosecution of the suit, is valid and effectual.

We regret that the jury assessed the damages so high. There was no ground for the claim of exemplary damages. The controversy was one of so doubtful a nature, that both parties well might and doubtless did consider themselves in the right. They might well try the case without exposing themselves to the imputation of bad motives. The damages were greater than we should have assessed. But it was a question peculiarly proper for the decision of a jury ; one in which their judgment would be quite as likely to be correct as ours ; and in our view, it is not so far out of the way as to raise a presumption that they were governed by passion or prejudice, or that they fell into any gross mistake of fact or calculation. The verdict must therefore stand and judgment be rendered upon it.