JOHN TILESTON *v.* ALFRED NEWMAN AND STEPHEN R. GATES.

*Effect of division of town upon school districts.*

By act of the legislature, which came in force January 1, 1849, the town of Windsor was divided and incorporated into two distinct towns, by a line drawn from the northerly to the southerly line of the town, and provision was made, that each of the new towns should become organized, and their first meetings should be called and holden, in the manner prescribed by the Revised Statutes. The line of division passed through one of the school districts, numbered six, in the old town, leaving about one thirtieth part of the district in the west town newly created, and the residue in the east town. After the act of division came in force, the inhabitants of that portion of the district situate in the east town, newly created, met in pursuance of a warning signed by the person who was clerk of the district at the time of the division, and voted a tax for the purpose of building a school house, and at subsequent meetings elected officers, by whom this tax was assessed and collected. And it was held, that the portion of the district, thus assuming to act, was not a legal district, and that their proceedings, in this respect, were illegal and afforded no justification to the officer who collected the tax.

TRESPASS for taking a horse. The defendants pleaded severally the general issue, with notice, that they should justify,—the defendant Newman as collector, and the defendant Gates as prudential committee,—under a vote of school district No. 6 in Windsor, passed January 25, 1849, imposing a tax for the purpose of building a school house. Trial by the court, May Term, 1850,—HALL, J., presiding.

On trial the facts were found to be as follows. Previous to January 1, 1849, there had existed in the town of Windsor, for a number of years, a school district, numbered six, duly constituted and organized. On the first day of January, 1849, the statute of 1848, dividing the town of Windsor, came in force. By that statute the town of Windsor was " divided and incorporated into two distinct towns, by a line drawn from the northerly to the southerly line of said town ;" and it was provided, that that part lying easterly of said line should be called Windsor, and the part lying westerly should be called West Windsor, and that each of the new towns should become organized, and their first meetings, respectively, should be called and holden, in the manner prescribed by the Revised Stat-

utes, chapter thirteen, section eight. The line, which was created by that statute the dividing line between the two new towns, passed through said district No. 6, cutting off from its westerly side and leaving in the new town of West Windsor a strip of territory of the width of one half of a lot. On the part of the district, thus included in West Windsor, there were, on the first day of January, 1849, and at the several times in 1849 hereafter mentioned, two families resident, viz., that of Earl Cushman and that of David Sanderson. The part of the district left, by the division, in the new town of Windsor was much the largest part, being about twenty nine thirtieths of the whole, and in it the school house was situated. The inhabitants of the east part of the district, thus included in the new town of Windsor, never became organized as a school district, subsequent to January 1, 1849, and there was never any vote of the new town of Windsor, after that date, nor of the old town previous to that date, constituting such territory a district.

On the sixteenth day of January, 1849, the person, who had been elected clerk of said district No. 6 at the previous annual meeting of the district, posted a warning for a meeting of the legal voters in " District No. 6 in Windsor," to be held on the twenty fifth day of January, 1849. At the time and place named in the warning the inhabitants of that part of the district included in the new town of Windsor met and voted to raise a tax of sixty two and a half cents on each dollar of the grand list of 1848, for the purpose of building a school house. At a subsequent meeting of the inhabitants of the same east part of the district, held March 7, 1849, the defendant Gates was elected prudential committee and the defendant Newman collector.

In March, 1849, the selectmen of Windsor and West Windsor met, and ascertained and established the dividing line between the two towns, and ascertained what real estate, belonging to the inhabitants of the west town, lay within the limits of the east town, and minuted the amounts, so found upon the grand list of 1848,—the grand list also showing the school district, in which such real estate was located.

On the first day of May, 1849, the defendant Gates made a rate bill in accordance with the vote of January 25, 1849, above mentioned; and in making it, he omitted to insert the names or property

of Earl Cushman and David Sanderson, who resided in the west part of the district, as above stated. ·

There was also testimony given in the county court, which the plaintiff claimed tended to show that the rate bill was illegal by reason of other omissions, and also that the tax was not legally demanded of the plaintiff, before his property was distrained, and some question was made in reference to the sufficiency of the proof that the property was duly advertised ; but as these points were not decided by the supreme court, it is unnecessary to detail the evidence. In all respects, excepting those above stated, the proceedings were regular.

Upon these facts the county court rendered judgment for the defendants. Exceptions by plaintiff.

*Washburn & Marsh* and *O. P. Chandler* for plaintiff.

That part of the old school district No. 6, which fell, by the division of the town, into the new town of Windsor, was never, in terms, constituted a school district by *vote* of any town, and was never in fact *organized* as such. It follows, as a necessary consequence, that its inhabitants had no authority to assess taxes, unless the court are to imply an intent in the legislature to confer upon them that power by the statute of division. *Johnson* v. *Dole*, 4 N. H. 478. The former town of Windsor ceased to have corporate powers after the statute of 1848, [Acts of 1848, p. 8,] came in force. The case, therefore, is not within the rule laid down in *Hartford Bridge Co.* v. *E. Hartford*, 16 Conn. 172. *Windham* v. *Portland*, 4 Mass. 389, and *Hampshire* v. *Franklin*, 16 Mass. 86.

But in this case the school district was in fact divided. It was not taking part and annexing it to another district, leaving the old district to enjoy its corporate powers, but it was the establishment, at the very least, of two new districts. *Richards* v. *Daggett*, 4 Mass. 534. Neither of these fragments can claim, more than the other, to be the original district No. 6, or to retain the old organization. If the old district No. 6 still remains entire, with its old organization, what is the nature of its existence ? It is within two distinct jurisdictions. Is it a union district, with the powers incident thereto ? Then it follows, that neither town has control over any part of its territory, without the intervention of a board of two justices. If not

Tileston *v.* Newman et al.

this, then it must be a district divided into two parts. What are the rights and incidents of each of these parts? Is the larger part a district, duly organized and able to assess taxes? Then it follows, that the smaller part has the same powers and incidents,—which is absurd. But if it be not a union district, and neither fragment be of itself a district, it follows, that the tax in question was voted by a body without authority for that purpose. In either event the old organization is lost, and either fragment, to possess the power of a corporation, must be re-organized,—as in the case where a union district is separated into its component parts. Rev. St. 115, § 23. The pretended district, which voted this tax, having never been organized, the tax is illegal, and both the collector and the prudential committee are liable. *Drew* v. *Davis*, 10 Vt. 506. Rev. St. 112, §§ 4–7.

The defendants are precluded from asserting, that the old district No. 6 still retains its entiety and organization; for they justify, in their special notice, under votes of district No. 6 in *Windsor*, and their evidence was given with a view to that justification. The only question, then, is, whether that part of the old district No. 6, which was left in the east town by the division, became, by the act of division, a district by itself, duly organized, and competent to raise taxes without farther action.

*Coolidge & Safford* and *Tracy Converse & Barrett* for defendents.

A school district has the powers of a corporation, for all the purposes of its organization, Rev. St. c. 18, § 7. The inhabitants of the town may alter the boundaries of a district, and even merge its existence in others; but, so long as it exists and has legally defined limits, it is, as a public corporation, independent. The statute contemplates the formation of school districts within the town, as is evident by the fact, that the power to create these corporations is given only to the town. Rev. St. c. 18, § 2. By special provision,— Rev. St. c. 18, § 5,—a school district may be made to cover territory in two towns, by the action of the two. Inhabitants may be " set " to a district in an adjoining town. Rev. St. c. 18. § 6. These are all the exceptions to the rule. The present case is therefore an anomalous one. The district, No. 6, has never been dissol-

ved, nor have its dimensions, as maintained for many years preceding the statute dividing the town of Windsor, been altered, in any mode prescribed by the general statutes. But that statute established a line of division, which cut off, territorially, a small portion of the west end of the district; and the question is, what effect, if any, had the statute upon the district? The defendants insist, that the integrity of the district was not affected by the division of the town; it retained the existence, limits and corporate independence, which it had before. *Waldron* v. *Lee,* 5 Pick. 323. *Richards* v. *Daggett,* 4 Mass. 534.

The opinion of the court was delivered by

REDFIELD, J. The important question in this case is, what effect did the division of the town of Windsor have upon the school districts in said town? The question is susceptible of many different answers. It may be said to have disorganized them wholly, or only those whose territory is divided, or it may have left them all as before, or it may have left those, whose territory is all in one town, as before, and it may have left a double organization with those divided, or the organization may survive in the larger section.

We should naturally incline to sustain the districts in that course, which they have adopted, if we could find any sound rule, upon which their proceedings could be vindicated.

As school districts are municipal corporations, consisting of territory, we see no good reason to doubt, that such districts, as retained their integrity, in either town, might be regarded as retaining their organization, until the town, into which they fell, interfered in the matter,—which they might never do. We see no necessity of any new action of the towns, or any new organization of the districts.

In regard to those, whose territory falls in different towns, the question is certainly attended with more difficulty. The course pursued by this school district seems to have been, to regard that portion of the territory, which fell within the present limits of the town of Windsor, being about twenty nine thirtieths of the entire territory, as still retaining its organic life. This, in this particular case, was certainly not a very irrational view. Most living bodies, from the loss of so small a fraction, would not be ordinarily expected to suffer a fatal interruption of the functions of organic life; many

XXIII.    54

vegetables and some animals retain the functions of life even after many subdivisions;—but generally such divisions must fall in the less vital parts. But we can hardly apply any such analogies to corporate life. It has been attempted, in modern times, say within the last few centuries, by the theologians, I believe, to apply this principle, to the infinitesimal subdivision of the church, upon the ground mainly, I suppose, that the life of the church was spiritual, and invisible, not corporate and organic. But I have never known this rule attempted to be applied to private or municipal corporations, nor do I perceive any general rule, upon which it could be justified.

We do not perceive any ground, upon which to determine to which section the organization adheres. We think, that could not be determined by the relative proportion of the sections. For these are susceptible of infinite variation, and it is at least supposable, they may happen to be equal. The officers may fall in different sections, or all in one section and the school house in the other.

And, as we have before said in regard to entire districts, so in regard to districts divided, we do not see how it is of any importance, as to the proportion of the sections, whether more, or less than half. It seems to us, that if we attempt to keep up any organic life whatever for this district, it must be in the whole district, as it was constituted, before the division of the town. And this is the only view, which the counsel for the defendants have ventured to urge upon our consideration. And this is not wholly free from difficulties. It may be asked, what kind of a school district this becomes, by falling within the limits of two towns? Or how it is possible to dissolve it? I should perhaps leave these questions to be solved by those, whose duty it may become to solve them. I *could*, I think, regard the former organization, extending over the whole territory, as remaining, until the towns in some way interfered in the matter.

But this, it seems to us, will not legalize the proceedings. For if we regard the warning of the inhabitants of school district number six in Windsor as susceptible of including the whole district, by its old name, yet it is obvious, that those who warned the meeting did not so understand the warning, or any of the after proceedings. For when they come to assess the tax, they wholly omit those persons residing in West Windsor; and this was not done through inad-

vertence, but evidently by design. This, then, must, we think, be regarded as a practical construction of their own proceedings in voting and collecting this tax. We think it impossible to say, that this tax was not voted and assessed, and collected by officers chosen by that portion of the district remaining in the present town of Windsor. And this we think something more than a mere accidental departure, in details, from the legal rights of the district. It was, as we think, a departure in essentials, under a mistake, to be sure, but one which enters into the essential principle and very basis of the proceeding. And unless we could come to regard such proceeding as legal, which we cannot, we think it impossible to uphold the justification of the defendant.

The bill of exceptions every where speaks of it as the act of that portion of the district remaining in Windsor; the pleadings so describe it; and the assessment shows the omission of Earl Cushman and David Sanderson altogether; and nothing is said, that this was accidental, and the contrary is very obvious. But if the case can be put upon different ground, there will still be opportunity.

The division of the old town of Windsor into two towns cannot, in any sense, be considered as a setting off a portion of this district, or the inhabitants, to West Windsor, any more than of the other portion to Windsor, as it seems to us; so that the case of *Richards v. Daggett*, 4 Mass. 534, has no proper application to the case.

Judgment reversed and case remanded.