## ISAAC M. BULL *et al. vs.* SCHOOL COMMITTEE OF THE TOWN OF WOONSOCKET.

The three villages of Globe, Bernon, and Hamlet were originally part of the town of Smithfield, and were organized as independent school districts.

When these districts were set off from Smithfield and annexed to Woonsocket, they retained their original district organization, suffering no change except that of name, the Globe District henceforth being known as No. 8, Bernon as No. 9, and Hamlet as No. 10. At a legal meeting of the School Committee of Woonsocket, held June 6, 1873, it was voted, "that District No. 10 at Hamlet be, and it is, discontinued; also, that the boundaries of District No. 9 be established so as to include what formerly belonged to both Nos. 9 and 10."

*Held,* that the School Committee had power to take this action.

STATUTORY proceedings under Gen. Stat. R. I. cap. 55, § 2, as amended by Pub. Laws, cap. 363, March 26, 1874.

*August* 4, 1875. MATTESON, J. This is an appeal by a number of persons styling themselves "residents, tax-payers, and voters in the 10th school district of Woonsocket," to the commissioner of public schools, from the decision and doings of the school committee of Woonsocket at their meetings on the 6th of June, 1873, and the 13th of July, 1874, as set forth in their votes upon those dates, the effect of which was to discontinue District No. 10 and to enlarge No. 9, so as to include the territory previously within No. 10.

The commissioner of public schools lays before us a statement of the facts of the case, agreed to both by the appellants and appellees, for our decision. These facts are: "1. The three villages of Globe, Bernon, and Hamlet were originally parts of the town of Smithfield, and were each organized as independent school districts.  2. When these districts were set off from Smithfield and annexed to Woonsocket, they retained their original district organization, suffering no change except that of name; the Globe District henceforth being known as No. 8, Bernon as No. 9, and

Hamlet as No. 10. 3. At a legal meeting of the school committee of Woonsocket held June 6, 1873, it was voted, that District No. 10 at Hamlet be, and it is, discontinued; also that the boundaries of District No. 9 be established so as to include what formerly belonged to both Nos. 9 and 10."

The question raised upon these facts by the appeal is, Did the school committee have power to discontinue District No. 10 and to alter the boundaries of District No. 9 so as to include the territory previously within No. 10, the voters in these districts having never voted to consolidate them?

Section 3, chapter 53, of the General Statutes provides, that " The school committee may alter and discontinue school districts, and shall settle their boundaries when undefined or disputed; but no new district shall be formed with less than forty children between the ages of four and sixteen, unless with the approbation of the commissioner of public schools." The school committee rely upon this section as authority for their action. It certainly seems sufficient. The language is explicit. Had the General Assembly intended thereby to confer the very power against the exercise of which complaint is made, they could scarcely have chosen words more apt.

The appellants, however, contend that such a construction of the section above quoted is inconsistent with other provisions of the statutes relating to public schools, and therefore that such could not have been the intention of the General Assembly. They refer to section 2, chapter 47, of the General Statutes : " Of the powers and duties of towns . . . . relative to public schools," which is, " Any town may be divided by a vote thereof into school districts ; " and argue that under the construction claimed it would be possible for a school committee to nullify the action of the voters of a town ; for if the latter should vote to divide the town into any number, for instance, ten districts, the school committee might immediately discontinue nine, and enlarge the one remaining so as to include the other nine. They also refer to section 5, chapter 50, of the General Statutes, " Of joint school districts," by which " any two or more adjoining school districts in the same town may by concurrent vote, with the approbation of the school committee, unite and be consolidated into one district, for the purpose of supporting public schools, and such consolidated

district shall have all the powers of a single district," and contend that the construction claimed renders this section practically useless; since if a school committee may first discontinue a district and then enlarge an adjoining district so as to include the one discontinued, a consolidation of the two may be effected by the action of the school committee alone, *without the concurrent votes of the districts;* and a result may thus be accomplished *indirectly* in a manner different from that provided for accomplishing the same result *directly*.   The appellants also refer to chapter 48 of the General Statutes, "Of the powers of school districts," by which school districts are made bodies corporate, and vested with certain powers necessary for the discharge of their duties; and allege, that it is unreasonable to suppose that the General Assembly intended to give school committees power to abolish these corporations without their consent.

The appellants assert that section 3, chapter 53, of the General Statutes should be so construed as to harmonize with these several sections to which they refer, and suggest that all the General Assembly intended was, that school committees should alter and establish the boundaries of school districts when undefined or disputed, and form new districts from parts of districts, when from any cause it should become desirable to subdivide existing districts, and should only wholly discontinue or abolish a district with its consent.

Doubtless all these provisions of the statutes are to be so construed as to make them consistent and to give effect to all.  But is the construction claimed for section 3, chapter 53, really inconsistent with the proper construction of the other sections of the statutes to which our attention has been directed?  We think not.

The language of the first of these — section 2, chapter 47 — is, "Any town *may be divided*, by a vote thereof, into school districts."   This may mean either that the town may divide itself by its vote, or that it may be divided, if it shall so vote. The appellants assume the former construction in their argument.   We think, however, that the true construction is the latter.   When a town has voted that it be divided into school districts its power has ceased.   It then becomes the duty of the school committee to lay off the districts and define their limits,

the only limitation upon their power being, that "no new district shall be formed with less than forty children between the ages of four and sixteen, unless with the approbation of the commissioner of public schools." It is true that in the present statute no express authority is given to school committees to *form* districts, but we think it is necessarily implied by the language of this limitation. Some of the obvious reasons for this construction of section 2, chapter 47, are: —

1. The form of the expression is the passive "*may be divided.*"

2. If the other construction be adopted, there is no limitation upon the power of towns in the formation of districts as to the number of children which such districts shall contain.

3. The districts can be laid off and their limits defined much more intelligently by a body like a school committee than by a town.

4. Our construction is more consonant with the policy of the school laws, which vest the control and direction of school affairs, subject to appeal to the commissioner of public schools, in the school committees.

A review of the legislation upon the subject of forming school districts confirms the construction which we have adopted.

Section 4 of the School Act of 1845 empowered and made it the duty of the several towns and cities "to lay off their respective territories into primary school districts, and to alter and abolish the same when necessary," subject to the proviso that "no new district should be formed with less than forty children over four and under sixteen years of age, and that no existing district by the formation of a new one should be reduced below the same number of like persons, unless with the approbation of the commissioner of public schools. Section 5 of the same act authorized and made it the duty of the school committees of the several towns "to form, alter, and discontinue school districts, and to settle the boundaries between them when undefined or disputed, subject to the direction or concurrence of the town or the commissioner of public schools."

Section 5 of the act of 1846 vested the sole power (subject to appeal) of laying off and altering school districts in the school committees, with the proviso of section 4 of the act of 1845

above mentioned ; and the further proviso that where there were no districts the committees should not proceed to lay off districts without the direction of the town.

Sections 9 and 12 of the act of 1851 gave to school committees the power, and made it their duty, to form, alter, and discontinue school districts, and to settle their boundaries when undefined or disputed : subject to the provisos that no new district with less than forty scholars between the ages of four and sixteen should be formed unless with the approbation of the commissioner of public schools ; and that when a town was not then divided into districts, it should not be done without the direction of the town.  No other provision was made in the act for forming, altering, or discontinuing school districts.

The Revised Statutes of 1857, so far as they relate to the subject under consideration, are substantially like the General Statutes.  They were probably intended to embody the provisions of the law existing when they took effect.  It will be seen that after 1846, towns did not have the power to form, alter, or discontinue school districts.  That power, subject to appeal to the commissioner of public schools, was vested in the school committees.  The only power which the towns possessed was to direct when districts should be formed, where it had not been done already.  We think, therefore, that the words, " any town may be divided by a vote thereof into school districts " (section 2, chapter 60, of the Revised Statutes corresponding to section 2, chapter 47, of the General Statutes), were intended merely to reserve to a town not then divided into school districts the right, existing under the previous law, to say when it should be so divided.

The second provision of the statutes to which the appellants have directed our attention as inconsistent with the construction claimed for section 3, chapter 53, is section 5, chapter 50, quoted above.  The purpose of this latter section was to enable adjoining districts in the same town, where the compactness and number of the population would warrant, to unite for the purpose of maintaining public schools, — the advantages of which are too apparent to be dwelt upon ; and as an inducement to so unite, section 6 provides, that such consolidated district shall be entitled to receive the same proportion of public money as

the districts composing it would receive if not united; but they are not permitted to unite except with the approbation of the school committee, or, on appeal, of the commissioner of public schools. We do not think that this power of voluntary consolidation conferred upon adjoining districts was intended to prevent the school committees from consolidating two or more districts, if in their opinion the interests of the schools or the judicious use of the public money required it, even though it should be against the wishes of the districts. The right of appeal to the commissioner of public schools would restrain and afford a remedy against the arbitrary exercise of such power by a school committee.

The third ground of objection urged by the appellants to the construction of section 3, chapter 53, claimed by the appellees is, that under that construction school committees have power to discontinue school districts without their consent. We do not deem this a valid objection. By the school laws of Massachusetts, chapter 23, § 24, of the Revised Statutes as construed in *Richards* v. *Dagget*, 4 Mass. 534, and *Allen* v. *School District No. 2 in Westport*, 15 Pick. 35, towns had power, from time to time, to form new districts and to divide or alter the limits of old ones. School districts were also corporations, with powers similar to those of our own. In *School District No. 1 in Stoneham* v. *Richardson*, 23 Pick. 62, Morton, J., in the opinion of the court, says : " But school districts are corporations not only very limited in their powers, but also of precarious existence. They may not only be varied and modified in the extent of their territorial limits, but also annihilated by a body over which they have no control." Again, on page 69, he says : " The power of towns to form new districts at their discretion necessarily implies the power of abolishing the old ones. And as these corporations are brought into existence without the volition of their members, embracing every one within their limits, *nolens volens*, so they may be abolished without the consent and against the wish of all the members."

We think the school committee were authorized to take the action appealed from, and that the appeal should be dismissed.

*Charles Hart*, for appellants.

*Edwin Aldrich*, for appellee.