CASE 80—PETITION EQUITY—JUNE 22.

## Pence, &c. v. City of Frankfort, &c.

APPEAL FROM FRANKLIN CIRCUIT COURT.

1. MUNICIPAL CORPORATIONS—DE FACTO COUNCILMEN—VALIDITY OF ORDINANCE.—The exercise by a *de facto* officer, of a power which lawfully appertains to the office of which he has possession, is valid and binding, where it is for the interest of the public or of any individual other than the officer himself, to sustain his acts. In this case four out of twelve councilmen elected failed to qualify and assume the duties of the office, and under the provisions of the charter four others were selected and appointed in their places by those councilmen who were elected, and who did qualify; and while under the provisions of section 152, of the Kentucky Constitution, an appointment to fill such vacancies is only until the next succeeding annual election, there being no election held at such time to fill the vacancies, and it being

provided in the city charter that councilmen shall hold office until their successors are elected and qualified, and the acts of the hold-over councilmen   having been performed with the   full knowledge and acquiescence of the other members of the council, who had the right to fill vacancies, are valid so far as the public and third parties are concerned; and an ordinance passed by the council at a meeting, when such hold-over councilmen were necessary to constitute a quorum, is valid.

? MUNICIPAL CORPORATIONS—ANNEXATION OF TERRITORY—REMEDY. —Under the provisions of the charter for cities of the third class (section 3287, Kentucky Statutes), residents of territory proposed to be annexed to such city must first seek a remedy against such annexation in the circuit court of the county within thirty days of the enactment of the ordinance providing for the annexation, and no other course can be pursued, and under the statute there is no appeal from the judgment of the court.

3. SAME.—The inhabitants of the annexed territory can not escape liability from municipal taxes on the ground that they receive no benefits at the hands of the city, where it appears that they derive all the advantages from the city that are enjoyed by any resident thereof, in the way of trade, in finding therein a market for their products, in using the streets, bridges and alleys of the city for the shipment of their products, and they enjoy the advantages of schools, churches, and public entertainments and all the privileges shared by the residents of the annexing municipality.

4. SAME.—The objection that the citizens of the annexed territory do not enjoy the advantages and protection of the water, light, and fire departments of the annexing city will not avail because the authorities thereof have had no opportunity to extend these comforts and conveniences to them, on account of the institution of this action soon after the ordinance of annexation, to test the validity of the same, and it is an unjustifiable conclusion to suppose that such advantages will not hereafter be provided.

5. SAME.—The inhabitants of the annexed territory can not escape municipal taxation because the annexing municipality has a large bonded and floating debt, it appearing that a large part of the indebtedness was created to build a competing line of railroad, and other necessary improvements, which the residents of the annexed territory enjoyed the benefit of in common with the other residents of the city.

6. SAME.—The provisions of the charter for cities of the third class, authorize such cities to annex territory which constitutes a

separate and distinct municipality, and provides that the annexing city shall be liable for all the indebtedness and liabilities of the municipality annexed, and shall become owner of its corporate franchises, property and rights.

HOLT & HOLT FOR APPELLANTS.

1. The provisions in the charter for cities of the third class that the councilmen shall hold office until their successors are elected and qualified, applies to only elected members of the council, and not to those who may be appointed to fill vacancies.

2. The appointment of the councilmen to fill vacancies was only valid until the next general election, and a failure to hold the election provided for by the law left the offices vacant. Section 152, Ky. Con.; Shelley v. McCullough, 97 Ky., 164; Mechem on Public Offices, sec. 129.

3. The rule that the action of a *de facto* officer is valid as to third persons, does not apply to legislative officers, as such legislative officers do not come within the term "civil officers." 1 Story on Constitution, sec. 792; 2 Bouvier Law Dictionary, Title "Civil Officers,, p. 232; City of Louisville v. Higdon, 2 Met., 526.

4. This is not an action under the provisions of the city charter to resist the annexation, but is one resisting the collection of illegal taxes attempted to be levied by virtue of a void ordinance.

FRANK CHINN ON SAME SIDE.

1. The four persons appointed to fill the vacancies could only hold office until the next regular election, which was in November, 1894, some time prior to the passage of the ordinance, and without them there was no quorum.

2. The residents of the annexed territory received no benefits whatever from the annexation, and therefore can not be made to pay taxes.

W. H. SNEED FOR APPELLEES.

1. Appellants can not collaterally assail the title of the acting or *de facto* councilmen to their office; and so long as they exercised the office of councilmen under color of authority they were in fact councilmen, or *de facto* officers, and as such their action is binding upon third parties. Throop on Public Offices, secs. 622,, 624, 627, 628, 629, 631; Civil Code, secs. 483-7; 57 Me., 541; Rice v. Commonwealth, 3 Bush, 14; Hoglan v. Carpenter, 4 Bush,

90; Rodman v. Harcourt 4 B. M., 232; Patterson v. Miller, 2 Met., 496; 6 B. M., 217; Toney v. Harris; 85 Ky., 479; 1 Monroe, 86.

2. The action in effect is one to prevent the annexation of the territory to the city of Frankfort, and the mode of doing so being plainly specified and laid down in the charter for cities of the third class, no other remedy can be invoked.

3. The fact that the annexed territory was a chartered town does not prevent its annexation. Cheaney v. Hooser, 9 B. M., 347.

4. The whole question as to the propriety of the annexation is addressed to the council. Cheaney v. Hooser, 9 B. M., 336.

JUDGE BURNAM DELIVERED THE OPINION OF THE COURT.

This suit was instituted by appellants, citizens and taxpayers residing and owning property within the territory which was added to the city of Frankfort by an ordinance annexing certain defined boundaries to that city, which was passed by the city council on the 8th and 9th. days of January, 1895, pursuant to the authority given by section 3287 of the Kentucky Statutes, which is as follows:

"Whenever it is deemed desirable to annex any territory to any city of this class, or to reduce the boundaries thereof, the city council thereof may enact an ordinance defining accurately the boundary of the territory proposed to be annexed or stricken off, and such ordinance shall thereupon be published in at least ten issues of the daily paper published in, and having the largest circulation in, the city; or, if there be no daily paper published in the city, then in at least four issues of a weekly paper published in and having the largest circulation in the city; or, if there be no daily or weekly paper published in the city, then by posting copies of the ordinance for at least ten days in four of the most public places in the city. In not less than thirty days after the enactment of such ordinance, if the publication or notice, as

herein provided, has been made or given, and no petiti n
is filed in the circuit court as provided in the next section,
the city council may, by ordinance, annex to the city the
territory described in the ordinance hereinbefore mentioned,
or reduce the limits, as the case may be; and upon the enact-
ment of such ordinance such territory shall become a part
of such city, or shall be stricken therefrom. Within thirty
days after the enactment of an ordinance proposing to
annex territory to any city or to reduce the limits thereof
one or more residents or freeholders of the territory proposed
to be annexed or stricken off may file a petition in the cir-
cuit court of the county, setting forth the reasons why such
territory, or any part thereof, should not be annexed, or
why the limits should not be reduced. Summons shall issue
thereon, and be executed upon the mayor, or, if he be absent,
upon the members of the council, and the answer of the city
shall be filed within twenty days after the service of the
summons. The case shall be tried according to the rules
and practice prescribed for the trial of equity causes, but
without the intervention of a jury. If the court be satisfied
upon the hearing that less than seventy-five per cent. of the
freeholders of the territory to be annexed or stricken off
have remonstrated, and that the adding or striking off of
such territory to the city will be of interest, and will cause
no manifest injury to the persons owning real estate in the
territory sought to be annexed or stricken off, it shall so
find, and said annexation or reduction shall be approved,
and become final. If the court be satisfied that seventy-five
per cent. or more of the resident freeholders of the territory
sought to be annexed or stricken off have remonstrated, then

such annexation or reduction shall not take place, unless the court shall find from the evidence that a failure to annex or strike off will materially retard the prosperity of such city, and of the owners and inhabitants of the territory sought to be annexed or stricken off. In case the court shall so find the annexation shall take place, notwithstanding the remonstrance. There shall be no appeal from the judgment of the court, and there shall be no change of venue from the county. Costs shall follow the judgment. If the judgment of the court be adverse to the annexation or reduction, no further effort to annex or strike off such territory shall be made within two years after the rendition of such judgment. The judgment shall, when entered, be certified to the city council, who may thereupon annex to or strike off from the city the territory described in the judgment, and such territory shall become or cease to become, as the case may be, a part of the city. If any city be annexed to another the city so annexing the territory of another shall be bound for all debts and liabilites, and shall be the owner of all the corporate property, franchises and rights of such municipal corporation."

The ordinance is in these words:

"Be it ordained by the common council of the city of Frankfort: Section 1. That the following described boundaries are proposed to be annexed to the city of Frankfort: Beginning at a point on the line of the L. & N. railroad, near the northeast corner of the coopershop owned by E. H. Taylor Jr., Co.; thence north 51, 57 in a straight line which, if extended would strike the center of the smokestack of the Carlisle Distillery to low water mark on the west bank of the Kentucky river: thence with, the meanders of the river

to the bridge; thence across Benson creek, crossing said creek with said bridge; thence with the southeast boundary of the turnpike road leading from said bridge to the western end of the railroad; thence with the railroad to the beginning."

The object of the suit being to enjoin the city of Frankfort from collecting taxes for city purposes within the territory set out and described in the ordinance. Appellants rely, for support of their contention, that they are not liable for city taxes upon several grounds, but chiefly, as they allege, because the ordinance of annexation was not passed by a legally constituted council, and is, therefore, void; and, second, because they receive no benefits from the annexation, and to require them to pay city taxes is a taking private property for public use without compensation. We will examine these two defenses separately:

1st. As to the validity of the ordinance. This contention rests upon this state of fact: In November, 1893, pursuant to section 3270 of the Kentucky Statutes, there was held a regular election in the city of Frankfort to select a common council of the city, which was composed of twelve members, whose duty it was to enter upon the discharge of their official duties on the first Monday in December next after their election, and who, the statutes provide, "shall hold office two years, and until their successors are elected and qualified."

It is admitted that at this election twelve legally qualified persons were elected to fill these places, but that four of the persons so elected refused to qualify, and that the eight persons who were elected and did qualify—pursuant

to section 3285 of the Kentucky Statutes—selected four other persons to take the places of those who failed to qualify, and these four persons thus selected held their places in the common council, performing all the duties of councilmen continuously up to the time when the ordinance in question was voted on and passed, viz., on the 8th and 9th days of January, 1895, without having been elected to fill these places in November, 1894, at the regular election, or by appointment or election by the common council subsequently to that date.

It will not be necessary to enter into any elaborate discussion of the length of time which these appointed councilmen had the right to serve under the election in November, 1893.

Section 152 of the Constitution clearly provides that vacancies in an elective office of this character can only be filled by appointment until the next succeeding annual election in which either city, town, county, district or State officers are to be elected if three months intervene between the time when the vacancy occurred which the appointment is made to fill and the next succeeding annual election. This provision of the Constitution, we think, indicates that the appointment of these four persons properly lasted only until the regular election in November, 1894, and until their successors were elected and qualified, and this is the construction which has been placed upon this provision of the Constitution in the caseof Shelley v. McCullough, 17 Ky. Law Rep., 53, and as the whole question is elaborately argued there it will be unnnecessary to further discuss it here.

It is admitted that at the time the ordinance in question

was passed only nine members of the city council were present and voting as to it, and that three out of the nine thus present and voting were those who were appointed to fill the vacancies and whose terms legally expired at the first legal election after their appointment, viz., November, 1894. It is further admitted that of the nine councilmen present and voting only six were regularly elected at the November election, 1893, and it is contended that, as by section 3271 of the Kentucky Statutes, not less than seven members of the council shall contitute a quorum to do business, and, as only six *de jure* councilmen were present the ordinance so passed was void *ab initio*.

The validity of the ordinance, therefore, depends upon the legality of the acts of the *de facto* councilmen who were present at the time and voted for the ordinance, as it appears that there were seven votes cast for the ordinance and two against it, the two votes in the negative being cast by councilmen who held their office purely by appointment and in place of those who had failed to qualify who were elected in November, 1893.

It is admitted that these appointed councilmen who were present and voting were selected to fill vacancies by those who had been regularly elected to these places in November, 1893, and that they continued to perform the duties imposed upon them by their position with the full knowledge and acquiescence on the part of those who had the right to have re-appointed them after a failure to call an election in November, 1894. They were in no sense usurpers. We think it may be stated, as a general rule, that the exercise of a power by a *de facto* officer which lawfully appertains

to the office of which he has possession is valid and binding, where it is for the interest of the public or of any individual, other than the officer himself, to sustain the officer's acts. (Throop on Public Officers, section 622). And this doctrine has been repeatedly recognized in adjudications of this court. (Rice v. Commonwealth, 3 Bush, 14; Hoagland v. Carpenter, 4 Bush, 90; Rodman v. Harcourt, 4 B. M., 32; Patterson v. Miller, 2 Met., 496; 6 B. M., 217; 85 Ky., 279 and 480.)

It is contended by counsel in this case that whilst this doctrine relates to executive and judicial officers, it does not apply to legislative officers, either State or municipal; that officers of this class do not fall within the term "civil officer;" that they can not be impeached or compelled to act by mandamus, and we are referred, to support this contention, to the case of The City of Louisville v. Higdon, 2 Met., 526. In that case Higdon sued the city for $600 for work alleged to have been done and which had been accepted and ordered paid for by a resolution of the city council. The city answered, denying the performance of the work at the request of its authorities, and also denying the alleged indebtedness. The case turned upon the validity of the resolution, the question being whether the persons who passed the resolution and who assumed to act as common councilmen were so in fact. The provisions of the charter of the city of Louisville required that common councilmen should be chosen for one year, and no longer, and aldermen for two years, and no longer, from the day of their election, and the board of councilmen who assumed to give validity to the resolution in that case were elected on the 4th day of April, 1857, and were chosen for one year from that day, and their terms of office expired

on the 4th day of April, 1858. This resolution was passed on the 6th day of April, 1858, two days after the expiration of the terms of office of the councilmen under the provisions of the charter. There had been another general election for city officers at which a new board of councilmen had been selected, but they had not, at that date, qualified or organized for the transaction of business. There was nothing in the charter which provided that these councilmen should remain in office until their successors were elected and qualified, and the conclusion reached by the court in that case—that as their term of office expired on the 4th day of April, their power ceased on that day—followed necessarily from the language of the charter; but we do not think the case is at all analogous to the case at bar. Here the provisions of the charter expressly provide that the members of the council shall hold their office until their successors are elected and qualified.

Nor can we admit the contention of counsel that there can be no *de facto* municipal officers. Mr. Dillon, in his admirable work on Municipal Corporations, page 293, section 276, says:

"In this country the doctrine is everywhere declared that the acts of *de facto* officers, as distinguished from the acts of mere usurpers, are valid; and the principle extends not only to municipal officers generally, but also to those composing the council, or a legislative or governing body, of a municipal corporation."

And in support of this doctrine he cites a large number of adjudicated cases in various States of the Union. We can not doubt that the acts of the holdover councilmen in this

case, performed with the full knowledge and acquiescence of the other members of the council who had the right to fill the vacancies, are valid, so far as the public and third parties are concerned; and we, therefore, conclude that the ordinance in question is a valid ordinance.

Now, as to the second question as to the liability of appellants for city taxes, on the ground that they receive no benefit whatever at the hands of the city, section 3287 of the Kentucky Statutes, which authorizes the city council of cities of the third class to annex to the city outlying territory, provides that within thirty days after the enactment of an ordinance proposing to annex territory to any city or to reduce the limits thereof, one or more residents or freeholders of the territory proposed to be annexed or stricken off may file their petition in the circuit court of the county, setting forth the reasons why such territory or any part of it should not be annexed, or why the limits should not be reduced, and that the case should be tried according to the rules and practice prescribed for the trial of equity cases, without the intervention of a jury, and that if the court be satisfied, upon the hearing, that less than seventy-five per cent. of the freeholders of the territory to be annexed or stricken off have remonstrated, and that the adding or striking off of such territory to the city will be of interest and will cause no manifest injury to the persons owning real estate in the territory to be annexed or stricken off, it shall so find, and such reduction or annexation shall be approved and become final. And it further provides that if the court shall be satisfied that seventy-five per cent. or more of the resident freeholders of the territory sought to

(35)

be annexed or stricken off have remonstrated, then such annexation or reduction shall not take place unless the court shall find from the evidence that a failure to annex or strike off will materially retard the prosperity of such city and of the owners and inhabitants of the territory sought to be annexed or stricken off. In case the court shall so find the annexation or reduction shall take place, notwithstanding the remonstrance, and there shall be no appeal from the judgment of the court, and there shall be no change of venue from the county. The statute further provides: "If the judgment of the court be adverse to the annexation or reduction, no further effort to annex or strike off shall be made within two years after the rendition of such judgment."

There is little room for judicial construction of this language. It is plain and explicit. Residents of a territory proposed to be annexed must first seek a remedy against such annexing ordinance in the circuit court of the county within thirty days of the enactment of the ordinance proposing to annex. This is the course pointed out by the statute, and no other course can be pursued. And the statute provides that there shall be no appeal from the judgment of the court upon this question.

Now as to the effect of the extension upon appellants as property holders. Section 170 of the Constitution is in these words:

"There shall be exempt from taxation public property used for public purposes, places actually used for religious worship, with the grounds attached thereto and used and appurtenant to the house of worship, not exceeding one-half acre in cities or towns, and not exceeding two acres in the

country; places for burial not held for private or corporate profit, institutions of purely public charity, and institutions of education not used or employed for gain by any person or corporation, and the income of which is devoted solely to the cause of education; public libraries, their endowments, and the income of such property as is used exclusively for their maintenance; all parsonages or residences owned by any religious society and occupied as a home, and for no other purpose, by the minister of any religion, with not exceeding one-half acre of ground in towns and cities and two acres of ground in the country, appurtenant thereto; household goods and other personal property of a person with a family, not exceeding $250 in value; crops grown in the year in which the assessment is made, and in the hands of the producer; and all laws exempting or commuting property from taxation other than the property above mentioned shall be void. The General Assembly may authorize any incorporated city or town to exempt manufacturing establishments from municipal taxation for a period not exceeding five years, as an inducement to their location."

Section 171 provides that taxes shall be levied and collected for public purposes only, and that they shall be uniform upon all property subject to taxation within the territorial limits of the authority levying the tax, and that all taxes shall be levied and collected by general laws.

Section 172 provides that all property not exempted from taxation by this Constitution shall be assessed for taxation at its fair cash value, estimated at the price it would bring at a fair voluntary sale, and that any officer or other person authorized to assess values for taxation, who shall commit

any willful error in the performance of his duties shall be deemed guilty of misfeasance, and upon conviction thereof shall forfeit his office and be otherwise punished as may be provided by law.

Section 4020 of the Kentucky Statutes provides:

"All real and personal estate within this State, and all personal estate of persons residing in this State, and of all corporations organized under the laws of this State, whether the property be in or out of the State, including intangible property which shall be considered and estimated in fixing the value of corporate franchises as hereinafter provided, shall be subject to taxation unless the same be exempt from taxation by the Constitution, and shall be assessed at its fair cash value, estimated at the price it would bring at a fair voluntary sale."

Section 4026 sets out the property exempt from taxation, being the same property recited in the Constitution.

Section 3290, being a provision of the charter of cities of the third class, provides that "the common council of each of said cities shall, within the limitation of the Constitution of the State and this act, have power by ordinance to levy and collect taxes upon all property, franchises and privileges taxable for State purposes."

The legislature has the power to create municipal corporations, to establish the boundaries of same and to alter and change them at pleasure, and to delegate such power to the legislative departments of city governments; and to authorize them to levy and collect taxes for their support and, that power having been exercised by the city authorities in conformity with all the provisions and restrictions re-

quired by the act of the legislature, the citizens and prop-
erty included in the annexed territory are liable for all the
burdens, in the form of taxation, which are imposed upon
the residents of the city making the annexation.  The cor-
porate boundaries being established, whatever property is
included within those limits has been included because it
justly belongs there, as being within the circuit which is
benefitted by the local government, and which should con-
sequently contribute  to its support.  No question can
properly be raised as to the complete legislative jurisdiction
over this matter, and the judiciary can have no general
authority to correct injustice in legislative action in matters
of taxation.  (Cooley on Taxation, page 157.)

The facts in this case show that the annexed territory is
a village, whose inhabitants are largely engaged in the busi-
ness of manufacturing lumber; that they derive all the advan-
tages from the city of Frankfort which are enjoyed by any
resident thereof, in the way of trade, in finding in that city
a market for their products, in using the streets, bridges
and alleys of the city for the shipment of their products; that
they enjoy the advantages of schools, churches, public enter-
tainments, and, in fact all the privileges shared by the
annexing municipality.

It is contended that the citizens of the annexed territory
do not enjoy the advantages and protection of the water,
light and fire departments of the  city;  but  they must re-
member that the city authorities of Frankfort have had
no opportunity to extend these comforts and conveniences
into their midst, as soon after the adoption of the annexing
ordinance this suit was instituted to test the validity of same,

and that as it is entirely feasible that all these advantages
should be extended to them, it is an unjustifiable conclusion
to suppose that they will not hereafter be provided.

It is contended that the city of Frankfort has a large
bonded and floating debt; that the annexed territory has no
debt, and that it would be extremely inequitable to subject
the inhabitants of the annexed territory to the burdens
imposed upon the citizens of the annexing municipality in
the discharge of its debt which they had no voice in creating.
But the facts in the record show that a large part of this
debt was created to build a competing line of railroad and
other necessary public improvements which they enjoy the
benefit of in common with other citizens of the city of Frank-
fort.

Another ground of objection interposed by the appellants
is that the annexed territory constitutes a separate and
distinct municipality, with an organized city government,
and that for this reason the act of the council is illegal. We
can not concur in this view. The provisions of the statute
authorizing the council to exercise this power clearly con-
templates that a city of the third class—to which Frank-
fort belongs—may have the power to annex the territory
of another municipality, as it provides that the city so an-
nexing the territory of another shall be bound for all the
debts and liabilities thereof, and shall be the owner of all
corporate franchises, property and rights of such other muni-
cipality.   And while the annexation of the town of Bellepoint
to the city of Frankfort may be a question of doubtful ex-
pediency, so far as the interest of either municipality is
concerned, this is a question that was addressed to the

council, and one which this court has no authority to take judicial notice of.

Perceiving no error in the judgment appealed from to the legal rights of the parties it is affirmed.