CASE 24—PETITION EQUITY—MARCH 22.

# Fitzpatrick, &c., v. Board of Trustees of Mt. Sterling Public Graded School, &c.

APPEAL FROM MONTGOMERY CIRCUIT COURT.

1. TAXATION—CHANGE OF TAXING DISTRICT.—The Legislature has the power to impose a tax upon a particular county or district for common school purposes without submitting the question to the voters to be directly affected thereby, and, therefore, where a statute has been enacted providing for such a submission, the Legislature may thereafter suspend, modify or repeal the statute, whether it has or not been voted on, provided vested rights be not thereby affected, nor contracts impaired.

By an act of the Legislature passed in 1884, a common school district was created in Montgomery county, embracing the city of Mt. Sterling, and described territory outside the corporate limits. This act provided for a tax upon the property of the district, but further provided that this tax should not be assessed and collected until the act had been ratified by a majority of the voters in the district. A vote resulted in favor of the tax, and the tax was assessed in 1885. In 1886 an act was passed so amending the act of 1884 as to restrict the district created thereby to the corporate limits of the city of Mt. Sterling. This amendatory act provided that it should not affect the validity of the vote theretofore taken, and that pupils residing outside the city limits should have the right to attend the school for one year in consideration of the tax levied in 1885. This action was instituted

Fitzpatrick v. Board of Trus. of Mt. Sterling Pub. Graded Schools.

by tax-payers, both within and without the city limits, to enjoin the collection of the tax levied in 1885 upon the property of the district originally defined. Being required to elect by which class of tax-payers the action should be prosecuted, the election was made to prosecute in the names of the city tax-payers. *Held*—That although the tax was voted for under the act of 1884 upon the faith of the fact that the burden was to be borne by those without as well as those within the city limits, the Legislature had the right to change the district, as was done by the act of 1886, and as to those outside the city limits (although not necessary to be determined), the Legislature had the power to impose the tax for 1885 in consideration of the benefits con-.ferred; with the *adequacy* of the consideration the court has nothing to do.

2. THE ORDER REQUIRING PLAINTIFFS TO ELECT not being appealed from, is not before-the court for review.

3. CURATIVE STATUTE.—Although there may have been irregularities in the election of trustees under the act of 1884, the Legislature had the power to cure the defect, as seems to have been its intention to do by the act of 1886.

4. PLEADING.—An averment that the acting trustees were not properly elected. and had no authority to act as such, was but a conclusion of law, and was properly stricken out.

J. H. HAZLERIGG FOR APPELLANTS.

A taxing district for a specific purpose having been fixed by the Legislature and the tax voted, the Legislature has no constitutional power to change the district so as to put the whole subsequent burden of taxation for the specified purpose upon a part only of the district as first defined.

H. L. STONE FOR APPELLEES.

The Legislature having the power to impose a tax for school purposes upon a defined district without submitting the question to the voters of the district, may modify or repeal the act in any way so that vested rights are not interfered with. (Hempstead v. Hempstead, 2 Ward., 109; Hartford Bridge Co. v. East Hartford, 16 Conn., 149; Windham v. Portland, 4 Mass., 384; Medford v. Pratt, 4 Pick., 222.)

JUDGE LEWIS DELIVERED THE OPINION OF THE COURT.

By an act to establish a system of graded schools in the city of Mt. Sterling, approved April 15, 1884, a common school district number one was created to embrace the city and described territory outside the

corporate limits. It was provided that the public school affairs for white children within the district should, thereafter, be under the control of five trustees to constitute, when elected by the white qualified voters, a corporate body, styled "The Board of Trustees of Mt. Sterling Public Graded Schools." Among other powers conferred by the act upon that board was authority to assess, levy and collect an annual *ad valorem* tax upon the property of white persons in the district, not exceeding fifty cents upon each one hundred dollars' worth of property, and a capitation tax not exceeding two dollars from each qualified white voter; and also to issue and sell bonds of the district not exceeding in amount twelve thousand dollars, the proceeds thereof to be applied to purchasing ground, erecting buildings thereon, and necessary expenses in conducting public schools, etc. But it was provided that such taxes should not be assessed and collected, nor the bonds issued, until after the proposition to do so had been submitted to the white qualified voters of the district, and voted for at the election by a majority of those voting thereon.

April 28, 1886, an act was passed so amending the act of April 15, 1884, as, by section 1, to exclude that part of district number one outside the corporate limits of the city of Mt. Sterling, and make said limits the boundary of the district. Section 3 of that act is as follows: "The pupils residing outside the city limits and the district as formed by this act, but inside the district as formed by the act of 1884, shall be entitled to attend the school contemplated by this act for the term of one scholastic year, in consideration of the pay-

ment by said district of the tax of thirty cents on each
one hundred dollars, and the poll-tax levied in the
year 1885, provided said pupils attend said school the
first year after its organization and commencement."
By section 4 it is made the duty of the board of trus-
tees to set aside a portion of the annual taxes to con-
stitute a sinking fund to pay off the bonds of said
district to be thereafter issued by said board. And
section 7 is as follows: "That the provisions of this
amendment in providing for said sinking fund shall
apply to any taxes assessed, levied or collected, or that
may hereafter be assessed, levied or collected, and to
any bonds of said district that may be issued which
are authorized by any election of the qualified voters
heretofore held in said district, as well as to any taxes
or bonds that may be authorized by any such election
hereafter held therein. This act shall not affect the
right of said board of trustees to collect the *ad valorem*
and capitation tax assessed and levied for the year
1885, on the tax-payers and property within said dis-
trict, as defined by said act of 1884; and this act shall
not in any manner affect the validity of the vote of the
qualified voters of said common school district here-
tofore taken on the proposition to levy and collect an
*ad valorem* and capitation tax, and to issue and sell
the bonds of said district; and the said board shall
have the power to assess and collect an annual tax of
thirty cents on each one hundred dollars' worth of
taxable property within said district, as defined by
section 1 of this act, for the period of fifteen years,
commencing with the year 1885, and a capitation tax
on each qualified white voter therein for the same

period, and to issue and sell the bonds of said district
as bounded by the limits described by section 1 of this
act," etc.

This action was instituted August 30, 1886, by citizens
and tax-payers of the district as defined by the act of
1884, though some of them reside outside the corporate
limits of Mt. Sterling, against the board of trustees
and J. H. Burroughs, tax collector, to enjoin the col-
lection of tax assessed in 1885 upon the property of the
district as defined by the act of 1884.

Upon motion of the defendants, the lower court
made an order requiring the plaintiffs to elect whether
they would prosecute the action in the names of those
of them who resided within the corporate limits of the
city of Mt. Sterling, or in the names of those resid-
ing outside said limits, though within the district as
described in the original act; and without waiving ex-
ception to the ruling of the court, the election was made
to prosecute in the names of the former. Whether that
order was or not proper is not necessary to determine,
inasmuch as it has not been appealed from, and is not
now before us for decision. Besides, a decision of the
question of the right of those who reside within the
corporate limits of Mt. Sterling to the relief asked
for, will incidentally involve a consideration of the
rights of those who reside outside. The allegation in
the original petition, in substance, that the persons
mentioned as defendants were never properly elected
trustees under either act, and had no authority to act
as such, is not definite or specific enough to raise an
issue of fact, being no more than the statement of a
conclusion of law, and, consequently, it was not error
for the court to strike it out.

Taking to be true the averment in the petition that the tax was voted for under the act of 1884, upon the faith the burden was to be borne by those residing in the district outside as well as by those inside the limits of Mt. Sterling, and the farther statement that a majority of voters of the school district as it now stands has never been cast at an election in favor of the imposition of any tax for school purposes, the question arises whether the tax for 1885 can be legally collected.

We think the act of April 28, 1886, was intended, and by fair construction does, in fact, cure whatever irregularities there may have been in the election held under the original act upon the proposition to tax the district for the purposes named in it, and for choosing the trustees as thereby provided. And as it is well-settled legislative power exists and may be exercised in such case, the tax must be regarded as valid as if the provisions of the original act had been literally complied with, and the trustees as duly elected. (See Cooley on Con. Lim., 416, and authorities cited.) Such being the case, the question becomes narrowed to the simple inquiry whether the Legislature had the power, by the act of 1886, to cut off a portion of the district as it existed when the election was held, leaving the burden of taxation upon those residing in the district thus contracted in area, and the authority of the board of trustees to act therein unimpaired.

Legislative power to divide existing counties and districts, organized for common school or other purposes within counties, and to create new ones at will, has been exercised in this State from the beginning without question. And, as a necessary consequence,

legislative power must at the same time exist to make provision in regard to property rights acquired, and debts and liabilities incurred by the county or district as it existed previous to the division of territory.

As said in the case of Laramie County v. Albany County, 2 Otto (92 U. S.), 307, where the question was elaborately considered and the authorities reviewed, "it is everywhere acknowledged that the Legislature possesses the power to divide counties and towns at their pleasure, and to apportion the common property and the common burdens in such manner as to them may seem reasonable and equitable." And where no provision is made for an apportionment of the property and debts, "the rule is, that the old corporation owns all the public property within her own limits, and is responsible for all debts contracted by her before the act of separation was passed."

Although the question whether a tax shall be imposed upon a particular county or district for common school purposes may with propriety be, and generally is, submitted to voters to be directly affected thereby, it is not indispensable to the validity of such taxation that it should be done. For the Legislature has the power to impose such taxes without a submission, and may unquestionably, at any time thereafter, suspend, modify or repeal the statute authorizing it, whether it has or has not been voted on, provided vested rights be not thereby affected nor contracts impaired.

As the question before us is, therefore, purely legislative, and involves no constitutional right of the taxpayers in the district as it exists under the act of 1886, the court has no power to suspend or interfere with the

collection of taxes authorized by that act. It is true, the entire burden in virtue of the act falls upon them, but they are compensated by having the exclusive enjoyment of schools established and supported by the taxes they pay; whether fully and adequately compensated or not, it is the province of the Legislature, not the judiciary, to determine. It seems those who reside in the original district outside of Mt. Sterling are required by the act of 1886 to pay taxes assessed for the year 1885, and pupils in that territory were given the right to attend the district school for one scholastic year.

As, according to the views we have already expressed, there can be no question of the power of the Legislature to impose that burden in consideration of the benefit conferred, there is nothing more involved, so far as that class of tax-payers is concerned, than a calculation of gain and loss, with which the court has nothing to do.

Perceiving no error of law in any of the rulings of the lower court, the judgment must be affirmed.

Judge HOLT not sitting.