No. 13,013.

J. H. FULLILOVE ET ALS. VS. POLICE JURY, BOSSIER PARISH, ET AL.

1. The taxing power referred to in Article 202 of the Constitution of 1879, as to be exercised by parishes and municipal corporations under legislative authority, but solely for "parish" and "municipal" purposes has no reference to the special taxes authorized to be levied in aid of works of public im-

Fullilove et als. vs. Police Jury.

provement and railway enterprises under the provisions of Art. 242 of the Constitution. Taxes of that character were made the subject of separate consideration by the framers of the Constitution. They were affirmatively taken beyond and withdrawn from within the scope of legislative, parish, corporate action by Article 242 of the Constitution, and made to be governed and dealt with as independently provided for therein.

2. A tax consented to under the provisions of Art. 242 of the Constitution by the owners of taxable property, is not a "parish" tax, and does not bind the parish as such, but is levied upon the theory of local and special benefits under the actual or presumed direct, individual consent of the parties concerned. The taxes collected, though in the custody of and disbursed by the parish authorities, are not parish monies.

3. The parish authorities in ordering the elections provided for in Acts No. 35 of 1886 and No. 159 of 1896—announcing the results thereof, and levying taxes consented to at such elections, do not act as representatives of the respective parishes. They are selected merely as ministerial, public agencies resorted to for the purpose of ascertaining and making effective the will of the people of particular localities, in respect to special taxes of the character referred to in Art. 242 of the Constitution. When taxes are levied under such elections, the taxing power is exercised by the owners of the property to be taxed under the constitutional authority of Art. 242 of the Constitution, and not by the parishes, or under legislative authority.

A tax levied by the parochial authorities of a parish upon all the taxable property of one of the wards of the parish, upon the petition of property tax payers of the ward as provided for in Act No. 153 of 1894, is legal and constitutional.

Acts No. 35 of 1896 and No. 153 of 1894 are not unconstitutional as not fully and fairly expressing their objects in their title. The former act clearly expresses that it is an enforcement of the provisions of Art. 242 of the Constitution of 1879, and the second act amendatory of the first merely widens the extent of the enforcement.

ON APPEAL from the Second Judicial District Court for the Parish of Bossier. *Watkins, J.*

*Wise & Herndon* and *Solomon Wolff* for Plaintiffs, Appellees.

*Leonard & Randolph* and *John D. Wilkinson* for Defendant, Railway, Appellant.

*A. J. Murff* for Defendant, Parish, Appellant.

Argued and submitted January 28, 1899.
Opinion handed down February 20, 1899.

The opinion of the court was delivered by

NICHOLLS, C. J. The plaintiffs represented in a petition filed by them in the District Court for Bossier parish, in November, 1898, that they were property tax-payers of Ward One of said parish.

That the police jury of Bossier parish, at its session of the 11th of August, 1897, ordered a special election to be held in said Ward One, to take the sense of the property tax-payers of said ward, in regard to voting a special tax of five mills on the dollar, of all the taxable property in said ward, and fixing a term of ten years, beginning with the first day of January, 1898, in aid of the Shreveport and Red River Valley Railroad Company.

That the police jury acted in said matter by virtue of the provisions of Act No. 35 of 1886, as amended by Act No. 153 of 1894, and said police jury acted without any valid authority in law, and all of their acts in reference to said special tax were unconstitutional, null and void, and without effect. In view of the premises, alleging that they had property in said ward, subject to said tax; that they had a common interest in having the said tax declared unconstitutional, and that their interest in the same, exceeded two thousand dollars; they prayed that the parish of Bossier, and the Shreveport & Red River Valley Railroad Company be cited, and that Act No 153 of 1894, amending Act No. 35 of 1886, be declared unconstitutional, null and void; that all acts of the police jury, under and by virtue of it, in so far as it levied a tax against the property of petitioners, be decreed to be null and void and of no effect.

The police jury answered, pleading first a general denial; further answering it averred, that the election was ordered, and was held and carried in favor of said tax, and that the tax of five mills was levied over all the property of said Ward No. 1, in accordance with the will of the people and according to law, for ten years, in favor of the Shreveport and Red River Valley Railroad Company.

It averred that the acts of the legislature mentioned in plaintiffs' petition were constitutional and all of its own acts legal.

It averred, that it was only a nominal party to the suit, and prayed to be dismissed with costs.

The railroad company answered, pleading first the general issue. It pleaded the prescription of three months against the plaintiffs, and averred that they were estopped from bringing the suit as they had participated in the election.

It averred that during the year 1897, the police jury of Bossier, pursuant to law, and after more than one-third of the property taxpayers of Ward One of said parish had petitioned therefor, and after a legal election, participated in by the property tax-payers of said ward, at which a majority in number and amount voted in favor thereof, the police jury levied, according to law, a tax on said property, in Ward No. 1, in aid of respondent, of five mills on the dollar for ten years, beginning with 1898.

That in consideration of said tax, or subsidy, respondent had built, completed, and was then operating its said railroad through said Ward One, and that the tax collector of Bossier parish was then collecting said tax to which respondent had a vested right. It averred that the acts of the legislature referred to were legal and constitutional, and were full warrant for the acts of the police jury, and that all the police jury's acts were legal.

Before the case was tried, the parties to the suit signed an agreement and statement of facts, by which it was admitted that the plaintiffs voted against the tax, as alleged—that their joint interest exceeded two thousand dollars; that the railroad had been built as alleged in the company's answer; that all the proceedings of the police jury, and the petition of property holders, and vote and proclamation, and levy of tax of five mills for ten years were in due form and regular. That the only contest between plaintiffs and defendants was the constitutionality and legality *vel non* of Act No. 35 of 1886 of the General Assembly of Louisiana, as amended by Act No. 153 of 1894, and the constitutionality *vel non* of said legislation, and the legal questions raised by pleas. Citation in the case was served on the police jury, on November 11th, 1898, and upon the railway company on November 14, 1898

The court rendered judgment in favor of plaintiffs, and against defendants, decreeing that Act No. 153 of 1894, and the act of the police jury of Bossier thereunder, in so far as it levied a tax against the property of the petitioner were unconstitutional, null and void, and of no effect.

Defendants appealed.

Act No. 35 of 1886, referred to in the pleadings, is entitled: "An act to prescribe the manner in which special elections shall be held in the parishes, cities and incorporated towns of this State, for the purpose of levying special taxes in aid of railway enterprises, and provid-

ing for their enforcement and collection, and to carry into effect Art. 242 of the Constitution of 1879."

Act No. 153 of 1894, to which reference is made in the pleadings, is entitled:

"An act to amend and re-enact Sections 1, 4 and 6 of Act No. 35, approved June 28th, 1886, entitled an Act to prescribe the manner in which special elections shall be held in the parishes, cities and incorporated towns of this State, for the purpose of levying special taexs in aid of railway enterprises, and providing for their enforcement and collection, and to carry into effect Article 242 of the Constitution of 1879."

The body of the act reads as follows:

"Section 1. Be it enacted by the General Assembly of the State of Louisiana, That Section 1 of Act 35, approved June 28th, 1886, be amended, and re-enacted, to read as follows:

"Sec. 1. That, whenever cne-third of the property tax-payers of any parish, parish ward, city or incorporated town, in this State shall petition the police jury of said parish or the municipal authorities of such city or incorporated town, to levy a special tax in aid of any railway company or corporation organized under the laws of this State, the said police jury, municipal or town authorities, shall order a special election for that purpose, and submit to the property tax-payers of such parish, parish ward, city or incorporated town, the rate of taxation and the purpose for which it is intended; provided, that said election be held under the general election laws of this State, at that time in force and at the polling places at which the last preceding general election was held, and not sooner than thirty days after the official publication of the petition and the ordinance requiring the election; both of which shall be made in the same manner as provided by law for judicial advertisements.

"Sec. 2. Be it further enacted, etc., That Section 4 of Act 35, approved June 28th, 1886, be amended and re-enacted, to read as follows:

"Section 4. That if a majority in number and in value of the property tax-payers of such parish, parish ward, city or incorporated town shall vote in favor of such levy of said special tax, then the police jury, for and on behalf of such parish or ward thereof, or the municipal authorities, for and on behalf of such city, or incorporated town, shall immediately pass an ordinance levying such tax for such time, as

may have been specified in the petition, and shall designate the year in which such taxes shall be first levied and collected.

"Section 5. Be it further enacted, etc., That Section 6 of Act 35, approved June 28th, 1886, be amended and re-enacted to read as follows:

"Section 6. That the police jury of any parish or the municipal authorities of any city or incorporated town, shall, when the vote is in favor of the levy of such taxes, levy and collect annually in addition to other taxes, a tax upon all taxable property, within such parish, parish ward, city, or incorporated town, sufficient to pay the amount specified to be paid in such petition; and such police jury and municipal authorities shall have the same power to enforce and collect any special tax that may be authorized by such election, as is, or may be conferred by law upon them for the collection of other taxes; which taxes so collected shall from time to time, as the same are collected, be paid to the railway company or corporation named in such petition, or to any person, partnership. or other company or corporation to which the same may have been assigned."

### OPINION.

A comparison of Act No. 35 of 1886, with Act No. 153 of 1894, will show, that provision is made in the latter for the submission by the parochial authorities, under certain circumstances, to the property taxpayers of wards in the different parishes through elections to be ordered by police juries, whether or not a special tax should be levied on the taxable property in said wards in aid of railway enterprises, for the canvassing and announcement by them of the result of said election, and for the levying by them (in the event that said tax should have been consented to) of the tax voted, for whereas, Act No. 35 of 1886 provided simply for such elections being held in parishes, cities and incorporated towns, and did not include wards.

The plaintiffs in this suit, attack the proceedings of the police jury, of the parish of Bossier, as being illegal and unconstitutional from beginning to end. Assuming that the source of the power of the parish of Bossier to act in this matter rests upon the Act of 1894, they contend the legislature of the State was without authority itself to confer such a power upon the parochial authorities. They maintain that "statute" authority to parishes to levy taxes is limited by Article 202 of the constitution to taxation for "parish" purposes, and they assert,

that a tax levied in aid of a railroad enterprise is not a tax for a "parish purpose."

Their position is, that the authority of the parochial authorities in respect to a tax to be levied in aid of a railroad, rests exclusively upon the provisions of Article 242 of the Constitution itself, and that that article conferred power and authority upon the police juries to deal with parishes in their entirety as single units, and not with wards which are subordinate local subdivisions of parishes.

Article 202 of the Constitution of 1879 declares, that "the taxing power may be exercised by the General Assembly for State purposes and by parishes and municipal corporations under authority granted to them by the General Assembly for parish and municipal purposes;" and Article 209, that "no parish or municipal tax for all purposes whatsoever, shall exceed ten mills on the dollar of valuation, *provided,* that for the purpose of erecting and constructing public buildings, bridges and works of public improvement in parishes and municipalities, the rate of taxation herein limited may be increased, when the rate of such increase, and the purpose for which it was intended shall have been submitted to a vote of the property tax-payers of such parish or municipality entitled to a vote under the election laws of the State, and a majority of same voting at such election shall have voted thereon."

These two articles of the Constitution, are found in that instrument, under the heading of "Revenue and Taxation."

Article 242 of the Constitution of 1879 as amended, reads as follows:

"The General Assembly shall have power to enact general laws authorizing the parochial or municipal authorities of the State, under certain circumstances, by a vote of a majority of the tax-payers in number and amount, voting at the election to levy special taxes in aid of public improvements or railway enterprises, *provided* such tax shall not exceed the rate of five mills *per annum* nor extend for a longer period than ten years."

This article is found in the Constitution, under the heading of "Corporations and Corporate Rights."

It may be conceded, that the right of the General Assembly to authorize "Parishes" and "Municipal Corporations" to exercise the "taxing power," and the right of the parishes and municipal corporations to exercise such power by virtue of legislative grant, is limited to taxation for "parish and municipal purposes," and that any attempt

.to `pass` beyond the limited object declared, would· be *ultra vires* and unconstitutional, but the question is, do parochial authorities act as representatives of their respective "parishes" when under legislative provisions they submit to a vote of·the property tax-payers either of the entire parish, or of a defined subdivision thereof, the question as ,to whether they shall be specially taxed in aid of a railway enterprise?

In' such action and that which may incidentally and consequentially flow out of it "corporate" action of the parish as a political body and is a tax consented to at such an election a "parish tax?" An examination of the language of Article 202 will show, that, the taxation therein referred to is taxation by the "parishes." The "parochial authorities" are not mentioned. It is only in so far as they are called on to act as representatives of the parishes, in' respect to matters binding the corporation and as to which they may, in one sense, be said to be the parish itself, that they become connected with the subject matter therein referred to.

Article 242 of the Constitution, on the other hand, does not mention the "parishes" themselves, but does mention the "parochial authorities" and constitutes them public ministerial agencies "to levy special taxes in aid of public improvements or railway enterprises," when consent to such taxes within the limitations fixed has been given as directed ·by that article by the owners of the property to be subjected to the tax. The designation of the parochial authorities as the public agency resorted to for the purpose of ascertaining and making effective ·the will of ,the people of a particular locality, in respect to special taxes of the character referred to, simply is a matter of convenience.

A special person, or officer, or board might have been charged with ·the performance of these duties.

The ·purpose of such taxes is not in aid of matters falling generally .and properly under the control of and within the scope of the legisla- ·tive action of the parochial authorities as representing parishes, but partially withdrawn from such control by force of affirmative limitations, (subject ·to be reinstated to a certain extent by a vote of the people of the parish), but, it is in aid of matters outside of, and never ·brought at all within the range of legislative corporate action.

A tax consented to under the provisions of Article 242 of the Constitution by the owners of taxable property, is not a "parish" tax, and .does not bind the parish as such, but is levied upon the theory of local ;and special benefits·received under the actual or presumed direct, indi-

vidual consent of the parties concerned. The taxes collected, though in the custody of, and disbursed by, the parish authorities, are not parish monies.

We are of the opinion, that the taxing power referred to in Article 242 of the Constitution as to be exercised by "parishes" and "municipal corporations" under legislative authority, but solely for "parish" and "municipal purposes," has no reference to the special taxes authorized to be levied in aid of works of public improvement and railway enterprises under the provisions of Article 242 of the Constitution. That taxes of that character are made the subject of separate consideration by the framers of the Constitution. That they are affirmatively taken beyond and withdrawn from within the scope of legislative parish corporate action by Article 242 of the Constitution, and are made to be governed and dealt with as independently provided for therein.

Plaintiffs argue, that Article 242 of the Constitution *per se* goes no further in the way of granting authority to parochial authorities to levy taxes in aid of railway enterprises, under a vote of the people, than to authorize them to do so upon a vote of the owners of property throughout the entire parish consenting to a tax upon all the taxable property in the parish. That it would be essentially necessary for a legislative act supplementary to Article 242 of the Constitution to be enacted to authorize "ward" taxation, and bring it under the duties and control of the parish authorities. That this legislative act would, therefore, be in reality, the source of the power of such taxation, and of the duty of the parochial authorities in regard thereto, and that this added power it was beyond the legislature to give.

We do not give to Article 242 of the Constitution the limited scope that plaintiffs contend for. The article fixes a limit to the rate of taxation, fixes the length of time during which the tax should be levied, and the character and the number of the voters who shall determine whether the tax shall be levied or not, but it is significantly silent as to the extent of the territory in which the property is to be taxed, and it nowhere declares that the property tax-holders who shall vote at the special elections authorized to be held, shall be the property tax-owners of the entire parish. The wording of the article on this latter point, as well as to the territory in which the tax is to be levied, seems to have been designedly left uncertain to be fixed by the power either given to or left with the General Assembly, to determine the

"certain circumstances" under which those special elections should be held, and regulate and define the duty cast upon the parochial authorities of ordering the same, announcing their result, and levying the special taxes voted for.

There was not an absence of power in the people in the wards in the different parishes, prior to the passage of Act No. 153 of 1894, to have the property therein taxed in the aid of railway enterprises, under elections authorized to be held by Article 242 of the Constitution, but the provisions of that article were not in all respects self-operative.' The people of the different wards had prior to the enactment of the Act of 1894, the same powers which they have now, but they were latent requiring legislative action to enable them to be called into action. The legislature was not called upon to grant powers, but to direct and regulate the "certain circumstances" under which they should be called into action, the manner of their exercise, the time, place and instrumentalities necessary for holding the elections contemplated. Plaintiffs are in error in referring to Act 153 of 1894 as the source of a power of ward taxation to be exercised either by the "parishes" or by "the parochial authorities," for special taxes in aid of railway enterprises. That statute is simply a general statute making effective powers already granted or reserved to the people of different localities, and imposing duties upon parochial authorities under Article 242 of the Constitution. (State *ex rel* Ferguson vs. Caffery, 49th An. 1748.) The "taxing power" itself is exercised by the owners of the property to be taxed, and neither by the "parochial authorities," nor by the "parishes."

When this question was presented to us, we were considerably impressed at first by difficulties and complications which suggested themselves to us as likely to arise in the enforcement of Article 242 of the Constitution, in the event the property owners of a particular ward of a parish should have exercised the right of taxing their property to the full permitted limit of five mills, and the people of the entire parish, or of the remaining wards should thereafter seek to have other special taxes levied under the same article. Reflection recalled to us, that while consideration of the difficulties which might arise in the enforcement of a law might be proper in attempting to reach conclusions as to the intent of the law maker, it would not be so for the purpose of testing the constitutionality of the law itself. That consideration of the difficulties which may be encountered in the enforcement of a law

Fullilove et als. vs. Police Jury.

under a certain construction of its provisions does not always justify a conclusion adverse to the legislature having had an intention in enacting it, which would lead to such results, is illustrated by the existing situation in respect to the very matter we are now discussing.

The convention of 1898, with the evident intention of placing this matter beyond the pale of controversy, intentionally inserted in Article 270 of the Constitution of that year, (the article which replaced Article 242 of the Constitution of 1879), the word "wards," leaving untouched a limit of five mills as the extent of the power of taxation. It has thus deliberately placed matters in a situation from which the difficulties and complications to which we have alluded must, inevitably, arise, and be forced upon us for decision.

Besides this, instances are not wanting where municipal corporations with limited powers of general taxation have been sustained and justified in independently levying special taxes in particular localities, by reason of special benefits under statutes authorizing them to do so upon the petition of a specified number or proportion of the inhabitants of these localities.

It is contended that Act No. 35 of 1886 is unconstitutional, in not complying in its title with Article 29 of the Constitution of 1879, by expressing fully and fairly the object of the act. The constitutionality of the original act was not contested in the court below. Plaintiffs questioned the constitutionality of that act as amended; in other words, the constitutionality of the amending act. Strictly speaking, we would be called on to consider only the questions raised by plaintiffs' pleadings. Being of the opinion, however, that Act No. 35 of 1886 is constitutional, we have no objection to so declaring. That act was clearly in enforcement of, and to make operative Article 242 of the Constitution of 1879. Act No. 153 of 1894, merely widens the range of this enforcement. Under the view we have taken of the original act, and of the article of the Constitution itself, the attack upon the amending act is not well founded.

For the reasons herein assigned, it is ordered, adjudged and decreed that the judgment appealed from be and the same is hereby annulled, avoided and reversed, and plaintiffs' demand be and the same is hereby rejected at their cost in both courts.