S. C. Crabb et al. v. Celeste Independent School District.

No. 2227. Decided May 1, 1912.

1.—Independent School District—Attacking Existence.

The existence and extent of a quasi-municipal corporation, such as an independent school district, organized and acting under color of law, can only be determined in a suit in the name of the State or by some one under its authority having a special interest affected by its existence. Thus, taxpayers in territory added to such district under color of proceedings provided by law could not question, in a private action, the regularity of such proceedings. (Pp. 196, 197.)

2.—Constitution—Grant of Power—Mode of Exercise.

Where a power is expressly given by the Constitution and the mode of its exercise there prescribed, such mode is exclusive. Thus, the taxation for school purposes permitted to an independent school district by article 7, section 3, of the Constitution can only be levied by a vote of two-thirds of the tax paying voters of such district voting at an election held for that purpose. (P. 198.)

3.—Same—Independent School District—Extension of Limits.

An independent school district which has voted a tax for school purposes can not, by a subsequent extension of its limits to include additional territory, made in the manner prescribed by law, acquire the right to levy such tax on property in the added territory, without further election by the qualified voters of the district as extended to determine that question.   (Pp. 196-199.)

4.—Same.

The fact that the addition of territory to a school district was made, as required by law, by petition of a majority of the inhabitants who were qualified voters of the new territory, or that two-thirds of such qualified voters signed the petition, was not equivalent to the election provided by the Constitution as a condition for levying a school tax upon the property of the district as extended, nor could the Legislature make this a substitute for the constitutional method.   (Pp. 198, 199.)

5.—Cases Discussed.

City of Eagle Lake v. Lakeside Sug. Ref. Co., 144 S. W., 709, approved. Madry v. Cox, 73 Texas, 541; Norris v. Waco, 57 Texas, 635, and numerous cases from other states distinguished.   (Pp. 200, 202.)

Error to the Court of Civil Appeals, Fifth District, in an appeal from Hunt County.

Crabb and others sued the Celeste Independent School District. Defendant had judgment.   Plaintiff appealed, and on affirmance obtained writ of error.

*Thompson & Mead,* for plaintiffs in error.—Where a tax has been voted upon the property within the limits of a school district, other territory cannot be thereafter added pursuant to chapter 124, section 153, Acts of Twenty-ninth Legislature, and the property within such added territory thereby made subject to such tax.   Any law authorizing the levy of such tax upon property so included in a school district would be in violation of article 7, section 3 of the Constitution of the State of Texas.   Snyder v. Baird School Dist., 102 Texas, 4; Brewer v. Hall, 111 S. W., 788; Park v. West, 102 Texas, 11; Jenkins v. DeWitt, 115 S. W., 610; Patching v. Hutchison, 118 S. W., 878; Cummins v. Gaston, 109 S. W., 476; City of Eagle Lake v. Lakeside S. Ref. Co., 144 S. W., 709.

Where territory has been added to a school district pursuant to chapter 124, section 153, of the Acts of the Twenty-ninth Legislature, and where, before such addition is made, such district has voted a tax of 20 cents on the one hundred dollars' worth of property situated in such district, in order to subject the property in the added territory to such tax, the matter must be submitted to the qualified voters of the said school district so increased, and two-thirds of the qualified property taxpaying voters of such enlarged district must vote in favor of such tax.   Same authorities.

*Looney & Clark,* for defendant in error.—The writ of error in this case seems to have been granted upon the proposition that this court was inclined to think that when territory has been annexed to a school district which has theretofore voted the special tax authorized by section 3 article 7 of the Constitution, that the annexed territory is

not subject to the special tax until another election has been held in which such added territory is permitted to participate. It seems to us that this proposition is contrary to the wording of the Constitution itself and cannot be sustained on reason or authority. Substantially the identical question had been passed on in a large number of cases from other jurisdictions and we are unable to find any authority to the contrary. See White v. Atlanta, 134 Ga., 532; Hughes v. Ewing, 93 Cal., 414; Madry v. Cox, 73 Texas, 541; Norris v. Waco, 57 Texas, 635; Laramie County v. Albany County, 92 U. S., 307; Constitution of Texas, sec. 3, art. 7, sec. 7, art. 11, sec. 10, art. 11; Crout v. Illingworth, 131 Iowa, 281; Layton v. New Orleans, 12 La. Ann., 515; Fitzpatrick v. Trustees Mt. Pleasant School, 87 Ky., 132; Fifield v. Swett, 56 N. H., 432; City of Seattle School Dist. No. 1 v. King County, 3 Wash., 154; Pence v. Frankfort, 101 Ky., 534; Revised Statutes, arts. 4026, 3944a; True v. Davis, 133 Ill., 522, 6 L. R. A., 266; Dillon on Municipal Corporations, 4th ed., p. 795; Van Hook v. Selma, 70 Ala., 361, 45 Am. Rep., 85; Acts of 1881, p. 63; Acts 1903, p. 38; Acts 29th Legislature, ch. 124; Boesch v. Byrom, 37 Texas Civ. App., 35.

Mr. Justice Dibrell delivered the opinion of the court.

Long prior to January 1, 1907, the Celeste Independent School District in Hunt County was duly incorporated in accordance with law, and while Celeste was an incorporated town it had never assumed charge or control of the public free schools within its limits as such. Several years prior to January, 1907, the exact time not appearing from the record, the property tax paying voters of this Independent School District voted a tax of twenty cents on the one hundred dollars valuation of the property subject to taxation therein, and for some years had annually levied and collected such tax for the support and maintenance of its public schools.

On May 24, 1907, upon the petition of a majority of the inhabitants qualified to vote for members of the Legislature, certain new and additional territory was annexed to said Independent School District as originally formed. The plaintiffs who reside in this additional territory brought this suit against the defendant, Celeste Independent School District, for the two-fold purpose of declaring void the action of the Board of Trustees of defendant in annexing the territory in which plaintiffs reside to such Independent School District, and to enjoin the collection of the special tax of twenty cents on the one hundred dollars valuation of their property subject to taxation in such territory, which had been assessed by the proper authority for the year 1908.

It will be sufficient for the purpose of this opinion to state in a general way that the grounds upon which plaintiffs seek to rid the territory of their residence from its connection with the Celeste Independent School District, were certain irregularities in the method of annexation. This subject was fully discussed, and we think properly disposed of, by the Court of Civil Appeals, in its holding that under the pleadings and upon the evidence the additional territory was lawfully annexed. Crabb et al. v. Celeste Independent School Dis-

trict, 132 S. W., 890. By reason of this view it will not be necessary to discuss that feature of the case further than to suggest that since the Celeste Independent School District, a *quasi-municipal* corporation, was acting under color of law its legality could only be determined by a suit brought for that purpose in the name of the State, or by some one under the authority of the State, who has a special interest affected by the existence of such corporation. Plaintiffs, in the capacity in which they sued, could not maintain a cause of action for the purpose of annulling the Independent School District. Brenham v. Bradshaw, 53 Texas, 337, 37 Am. Rep., 758; Graham v. City of Greenville, 67 Texas, 62; City of El Paso v. Ruckman, 92 Texas, 89.

The only question raised by the pleadings and evidence which this court can properly adjudicate relates to the authority of said Independent School District to levy and collect the tax of twenty cents on the one hundred dollars valuation of the property subject to taxation within the annexed territory.

It is conceded by all parties that the tax sought to be collected of plaintiffs was voted by a two-thirds majority of the tax-paying voters of the Celeste Independent School District before the territory in question was annexed, and that after the annexation no vote was had authorizing the tax. The proposition presenting this issue is stated by plaintiffs' counsel as follows: "Where territory has been added to a school district pursuant to Chapter 124, section 153, of the Act of 29th Legislature, and where, before such addition is made, such district has voted a tax of twenty cents on the one hundred dollars' worth of property situated in such district, in order to subject the property in the added territory to such tax, the matter must be submitted to the qualified voters of the said school district so increased, and two-thirds of the qualified tax-paying voters of such district as enlarged must vote in favor of such tax."

The tax sought to be collected of plaintiffs was by virtue of section 3, Article VII, of the State Constitution, as follows:

"One-fourth of the revenue derived from the state occupation taxes, and a poll tax of one dollar on every male inhabitant of this State between the ages of twenty-one and sixty years, shall be set apart annually for the benefit of the public free schools, and, in addition thereto, there shall be levied and collected an annual *ad valorem* State tax of such an amount, not to exceed twenty cents on the one hundred dollars valuation, as, with the available school fund arising from all other sources, will be sufficient to maintain and support the public free schools of this State for a period of not less than six months in each year; and the Legislature may also provide for the formation of school districts within all or any of the counties of this State, by general or special law, without the local notice required in other cases of special legislation, and may authorize an additional annual *ad valorem* tax to be levied and collected within such school districts for the further maintenance of public free schools and the erection of school buildings therein; *provided,* that two-thirds of the qualified property tax paying voters of the district, voting at an election to be held for that purpose, shall vote such tax, not to exceed in any one year twenty cents on the one hundred dollars valuation

of the property subject to taxation in such district, but the limitation upon the amount of district tax herein authorized shall not apply to incorporated cities or town constituting separate and independent school districts.''

It is an accepted rule of construction that where a power is expressly given by the Constitution and the mode of its exercise is prescribed, such mode is exclusive of all others. Parks v. West, 102 Texas, 11, 111 S. W., 726.

By the terms of section 3, Article VII, of the Constitution above quoted, the power is given independent school districts to levy and collect a tax of twenty cents on the one hundred dollars valuation of all the property subject to taxation situated within its limits, and the mode of levying and collecting such tax is limited to a vote of two-thirds of the qualified property tax paying voters of the district, voting at an election held for that purpose. The mode thus prescribed excludes all others, and it may be said that not only is no authority conferred by the Constitution to otherwise levy and collect such special tax, but that any other method of so doing is positively prohibited. Making a practical application of this rule, where an independent school district is incorporated with a fixed area and as thus formed votes the tax and afterwards takes in additional territory, and levies a tax on the property in such territory, it seeks in effect to collect a special tax by the method of territorial extension. This is clearly in violation of the Constitution, and hence cannot be done. The language of the Constitution is clear that independent school districts are permitted to levy the tax of twenty cents on the one hundred dollars valuation of property within its limits by submitting the proposition to the qualified tax-paying voters of such district, and then only upon a vote of two-thirds of such qualified voters. If the tax may be levied and collected on the property subject to taxation within the new territory without submitting the proposition to a vote of the qualified tax-paying voters of the district as altered and enlarged, then that which may not be done directly may be done indirectly. This is true for the reason that under the law additional territory may be taken in by the independent school district by a petition signed by a bare majority of the inhabitants of such new territory qualified to vote for members of the Legislature. Sayles' Supp. to Texas Civ. Stat., 1906, p. 441.

It is no answer to this objection to say that two-thirds of such qualified voters have signed such petition (although such was not shown to be the fact in this case) for the reason citizens residing in such district are entitled under the Constitution to have this issue determined by the ballot with its safe-guard of ascertaining the qualification of the electors, its secrecy, so essential to a free and untrammeled expression of opinion, freedom from intimidation and persuasion at the time of voting, and many other substantial rights growing out of the regulation of the polls. This principle was approved in the case of In re House Roll, 31 Neb., 505, in construing a constitutional provision of that State to the effect that county authorities shall never assess taxes beyond a certain maximum amount, unless authorized by a vote of the people. As a substitute for this provision

of the organic law, the Legislature undertook to authorize the county authorities to assess the additional tax upon a petition signed by a majority of the electors of the county, which was made by such legislative act equivalent to the popular vote required by the Constitution. The Supreme Court of that State held in effect that such act was a subterfuge and an abridgement of an essential right given the citizen by the supreme law of the State. The reasons assigned by the Chief Justice who wrote the opinion in that case for so holding are in part these: "Where an election is duly called and advertised, the reasons for and against the proposition are discussed and considered, and the electors vote upon such proposition as they may deem for their own and that of the country's best interest. The election is open and public, and the friends and opponents of a measure meet upon common ground and by their votes register their preference for or opposition to the proposition. None of these advantages, however, inure in favor of merely signing the petition. In such case the petition is presented to a party who frequently, without due consideration, signs the same, or signs it under representations which he afterwards finds do not conform to the facts."

It must be borne in mind that in cases where the Constitution authorizes the levy of a special tax by the qualified tax-paying voters, such tax is not levied by the municipality or quasi-municipality, but by the delegated taxing power of the owners of property. The exercise of such power must alone be by such property owners, and by no subterfuge, indirection, or the exercise of collateral legislative grants, can this delegated and restricted power be taken from the property owner. It is safe and proper to say that no special tax authorized by the Constitution to be levied by the vote of the qualified tax-paying voters of any municipality or school district can ever lawfully be levied without offering the opportunity to such property owners resident in such territory of exercising their privilege of the ballot. Cooley on Taxation, 569; Fullerton v. Police Jury, 51 La. Ann., 359.

The question here presented has not heretofore been before this court and, so far as we are able to ascertain, not before any of our courts, except the present case which was decided by the Fifth Court of Civil Appeals, in which the tax was held valid, and the case City of Eagle Lake v. Lakeside Sugar Refining Company, 144 S. W., 709, and a companion case [City of Eagle Lake v. Lakeside Rice Mill Co., 144 S. W., 712] by the Fourth Court of Civil Appeals, in which the tax was held void. The view of the later decision is clearly correct in its ruling that the tax levied against the property situated within the extension without a vote is void. We can see no escape from this conclusion, if the plain language of the Constitution is to be given the meaning it imports.

In deciding the question of constitutional construction under consideration, Judge Bookhout, in the case at bar, disposes of the question as follows: "Where a school district has voted for school purposes a tax of twenty cents and afterwards other territory is annexed, there is nothing in the Constitution requiring another election in which those in the annexed territory participate before property in such territory is subject to such tax. The twenty cents tax for school

purposes has been legally voted in the district before the territory in question was added. Persons owning property in territory added to an independent school district by the extension of its boundaries must accept conditions as they find them, or bring about an election to vote off the tax as provided for by statute.''

In handling the same question, Chief Justice James, in the case of City of Eagle Lake v. Lakeside Sugar Refining Company, above, in his characteristic force and direction, makes a different disposition of the question, and says: ''It appears from the petition that the vote, upon which the tax levied in this case rests, is a vote had by the citizens of Eagle Lake several years before September, 1907, which was a vote confined to the corporate limits of the city, and did not concern this outlying territory. We are of opinion that no property could be annexed to the city for school purposes and subjected to the additional tax, without compliance with said condition prescribed by the Constitution in respect to the added territory. The vote taken in the city several years before this annexation was made was not such compliance, and it is apparent from the record and the papers filed in this case that no election or vote has been had on the subject of this outlying territory.''

The question now under investigation was discussed by Chief Justice Parsons of the Supreme Court of Massachusetts in the case of Richards v. Ebenezer Dagget et al., 4 Mass., 534, in determining whether a property owner in a portion of a school district where a tax had been voted, but not assessed before such portion of the original district had been segregated, could be made to pay such tax. In that case the Chief Justice said: ''The case of alteration in districts, after the passing of votes to raise money, and before the assessment, is not expressly provided for in the statute; which it is our duty so to construe as will be most convenient and least injurious to the inhabitants of the town. Because it is always to be presumed that the Legislature intend the most beneficial construction of their act, when the design of them is not apparent. It is not just that a man should, by virtue of this Act, be assessed to the payment of money, in the raising of which he could have no agency, or from which he could not (without any fault of his own) derive any benefit. *Thus, if he was included within a district after the vote to raise the money had passed, it is admitted that he could not be assessed to the payment of it; for, not being a member of the district when the money was voted, he could have had no voice in the vote.*''

Learned counsel for defendant have filed in this case an able argument, but nowhere have they presented any proposition on the subject of their contention which can be sustained upon either authority or reason original or analogous. It is asserted, however, that ''substantially the identical question has been passed on in a large number of cases from other jurisdictions and we are unable to find any authority to the contrary.'' In connection with this statement the following citation of authorities as sustaining such position is made: White v. Atlanta, 134 Ga., 532, 68 S. E., 103; Hughes v. Ewing, 93 Cal., 414; Madry v. Cox, 73 Texas, 541; Norris v. Waco, 57 Texas, 635; Laramie County v. Albany County, 92 U. S., 307; Constitution of Texas, sec.

10, art. 11; Grout v. Illingworth, 131 Iowa, 281; Layton v. New Orleans, 12 L. Ann., 515; Fitzpatrick v. Trustees of Mt. Pleasant School, 87 Ky., 132, 7 S. W., 896; Fifield v. Swett, 56 N. H., 432; City of Seattle School District No. 1 v. King County, 3 Wash., 154; Pence v. Frankfort, 101 Ky., 534, 41 S. W., 1011; True v. Davis, 133 Ill., 522, 6 L. R. A., 266; Van Hook v. Selma, 70 Ala., 361, 45 Am. Rep., 85; Boesch v. Byrom, 37 Texas Civ. App., 35, 83 S. W., 18.

We have taken the time and pains to carefully review each of the authorities cited, and have concluded that no one of the authorities mentioned sustains defendant's position by enunciation of principles or from analogous reasoning. Of those cases in which the pertinent question is discussed no constitutional provision exists to limit legislative action, and in others the questions presented are not kindred to the one under consideration. We take them seriatim.

White et al. v. City of Atlanta, 134 Ga., 532, 68 S. E., 103, was an equitable proceeding by some of the residents and tax payers of the territory that had previously been outside of the corporate limits of the City of Atlanta, but subsequently brought within its limits by an extension process, to enjoin the officers of said city from putting into effect the Act so as to include such new territory. Collaterally and incidentally the question of taxation was discussed with reference to the power of the city to tax the property in the new territory to pay existing indebtedness of the city. The court held the act of extension valid and in addition to such holding said: "When included within the city by legislative enactment, they take the advantages of being residents or tax payers of the municipality, and they become subject to the corresponding proportionate burden, in the absence of lawful provision to the contrary."

It will be observed that the property within the extension was held to be subject to taxation levied by the city under authority of law, but there was involved no question of a tax levied by the property owners as provided for in our Constitution, and which furnishes the gist of the question involved in the case at bar.

In the case of Hughes v. Ewing, 93 Cal., 414, the Board of Supervisors of Fresno County, California, changed the boundaries of Fresno City School District by excluding therefrom certain lands and transferring same to other districts. Prior to that time, the electors of the district had voted to raise a certain sum for the purpose of building a school house, but this fact was not certified to the supervisors until after such lands had been excluded from the district. However it was sought to collect the tax on the excluded land, and the action was brought by the owners of said land to declare the tax null and void as to those lands and to restrain the tax collector of the county from collecting same.

A statement of the case precludes the possibility that the principle involved in this could have been involved in that case. It is interesting, however, to note the following holding in that case: "For all purposes of corporate power or liability, it (the school district) remained unchanged, and the property upon which the supervisors should have levied the tax is only such property as, at the time when the tax was levied, was within the boundaries of this corporation."

If the proposition thus announced is sound, then it is equally sound to say that when a special tax is voted the same can be levied only on the property that was within its boundaries at the time the tax was voted.

The question involved in Madry v. Cox, 73 Texas, 528, as to the power of taxation was whether or not the property within annexed territory was subject to taxation for a debt previously incurred by a vote of the people of the City of Bonham, to which such territory had been annexed. Referring to the annexation as a fact, Judge Stayton in that case held, ''When this is done the indebtedness of the corporation continues, and persons within territory annexed will become, in the absence of legislation to the contrary, subject to taxation for all municipal indebtedness existing before annexation as well as that afterwards contracted.'' This has ever been the law in this State and, so far as we know, in all other jurisdictions where there is an absence of legislation controlling the subject, but in what respect it throws light upon the question we are considering, we are not able to determine. If at the time a debt is created by a vote of the people of a city a tax is likewise voted to pay the interest and create a sinking fund to pay such indebtedness pursuant to some constitutional provision, a parallel case would be presented, and in such case we would not hesitate to rule the tax void as to property embraced in the subsequent extension of such city. In that case a debt was created by a vote of the people, but the tax was levied by the municipality and not by the property owners.

The question presented in the case of Norris v. The City of Waco, 57 Texas, 635, was whether rural lands, consisting solely of farm and pasture lands, embraced within the city limits of Waco were subject to city taxes. By no possible construction can that furnish an authority for a ruling on any issue involved in this case.

A statement from the syllabus of the case of Commissioners of Laramie County v. Com'rs of Albany County, 92 U. S., 307, will demonstrate its impertinence to any question raised in the present case, to-wit: ''Where the Legislature does not prescribe any different regulation, the rule is that the old corporation owns all the public property within its new limits, and is responsible for all debts contracted by it before the act of separation is passed; which debt it must pay, without any claim for contribution from the new subdivisions.''

The case nearest in point as sustaining the position of defendant is that of Grout v. Illingworth, 131 Iowa, 281. In that case the action was to enjoin the collection of the tax that had been voted in the school district for the purpose of erecting a school building prior to the time when the property against which the tax was sought to be collected had been taken into the school district. In other words, the district had been extended and certain property taken within its boundaries, and a tax had been levied pursuant to a vote of the qualified electors of the original district, but at that time the property in question was not within the district.

It is clear the Iowa case, above, is not an authority for the position taken by defendant's counsel from the fact that it is stated in the

opinion by the court that the right of the property owner to partici-pate in the proceeding with relation to the levy of the tax on his property is only fixed by the statute, and not by the Constitution. Here lies the important distinction. If we had no constitutional pro-vision to grapple with, we would be constrained to hold that where the legislative Act gave the property owner the right to participate in the proceeding to determine whether or not the tax should be levied, another legislative Act authorizing an extension of the district where the tax had been voted would subject the property within the exten-sion subject to the tax notwithstanding the non-participation of the property owner in the levy of the tax. This, however, is not the status of the case at bar, for here the right to participate in the levy of the tax is given the resident property owner by the Constitution, and the Legislature is denied authority to abridge that right. Where there is no constitutional inhibition, the power of the Legislature to enact laws is supreme and unlimited. But when the Constitution speaks, either by direction, negation or necessary implication, its voice must be heeded even by the sovereign power of the legislative branch of Government. State of Texas v. Brownson, 94 Texas, 436, 61 S. W., 114.

The question involved in the case of Layton v. City of New Orleans, 12 La. Ann., 515, was as to the power of the Legislature to abolish the incorporation of three municipalities and incorporate them into one, and authorize the one incorporation to levy a tax to pay the aggregate indebtedness of the three irrespective of the inequality of the respective amounts due by each. The Supreme Court of Louisi-ana held in that case that the Legislature having the power to create, modify or abolish municipal incorporations, it had the power to pro-vide in what manner the taxes should be levied for their support, and how their debts should be paid upon their dissolution. The questions considered and determined in that case have no relation to the question here involved.

The facts in the Kentucky case of Fitzpatrick v. The Board of Trustees, 87 Ky., 132, 7 S. W., 896, are similar to those in the Iowa case reviewed above, and the validity of the tax was sustained upon the same ground as that by the Iowa court, that there was no con-stitutional provision regulating the creation of the tax. In proof of this position we take from the opinion in the Kentucky case the following excerpt: "As the question before us is therefore purely legislative and involves no constitutional right of the tax payers in the district as it exists under the Act of 1886, the court has no power to suspend or interfere with the collection of taxes authorized by the Act."

The question in the New Hampshire case, Fifield v. Swett, 56 N. H., 432, was similar to the Iowa and Kentucky cases above, and was based upon similar facts. While the opinion does not disclose whether the tax was or not provided for by the New Hampshire Constitution, it is clearly inferable that it was pursuant to a legislative Act and the extension authorized by the same authority. It is true the rea-soning in that case is dissimilar to that in the other cases, and is such that this court would hesitate to adopt. It is based upon the analogy

that because a citizen, who after a tax has been voted in a school district voluntarily moves into such district with taxable movable property, is subject to pay such special tax, that therefore a citizen who is involuntarily brought into such district is subject to such tax. Whatever may be the provision in that State authorizing the tax, whether legislative or organic, it must be unlike that of our Constitution, for here the tax is only authorized by the qualified tax-paying property owners who reside within the limits of the district. Of course a citizen who lives beyond the limits of the district and voluntarily moves within its limits would be liable to pay the tax upon such property as he took with him or should afterwards acquire, just as the citizen who lives out of the district but owns property situated within the district is required to pay the tax. Such citizen is denied the right to vote upon the tax and is subject to its payment, but he is required to do this for the sole reason it is thus denominated in the Constitution.

In the City of Seattle School District No. 1 v. King County, 3 Wash., 154, the proceeding was to obtain a construction of a clause of the Act of March 26, 1890, as follows: "The Board of Education shall annually, at a meeting next preceding the annual tax levy for State and county' purposes, report to the county commissioners an estimate of the amount of funds required for the support of the schools, and the county commissioners are hereby authorized and required to levy and collect said amount the same as other taxes."

As stated in the opinion, "it appears that by proper proceeding, and in accordance with the law on that subject, the boundaries of the City of Seattle were somewhat enlarged on the first day of June, 1891, and the Board of Education have reported the amount of funds required, and requested that amount to be levied and collected upon the property in the district as enlarged; but the Board of Commissioners declined to levy upon any property except such as was within the city limits prior to the enlargement. A mandamus was asked requiring the commissioners and other county officers to levy, extend and collect the tax. The court ordered the peremptory writ of mandamus. It is evident no light is shed by this case upon the issue here.

The case of Pence v. City of Frankfort, 101 Ky., 534, 41 S. W., 1011, is another Kentucky case which involves a question similar to that in the other case above reviewed, and upon the legislative Act of that State alone is the decision based. We have heretofore shown its distinguishing feature.

In True v. Davis, 133 Ill., 522, 6 L. R. A., 266, it may be seen the issue here was not in that case, from a statement of the question by the court: "Does the prohibition of section 12, Article 9, of the Constitution prevent the annexation of two or more cities, incorporated towns or villages to each other, in the manner provided by the provisions of the Act entitled 'An Act to provide for the annexation of cities, incorporated towns or villages, or parts of the same, to cities, incorporated towns and villages,' approved and in force April 25, 1889, when such cities, incorporated towns or villages are each indebted, and the indebtedness of one or more of them exceeds the limits named in that section.?"

The question in the case of Van Hook v. City of Selma, 70 Ala., 361, 45 Am. Rep., 85, was as to the validity of an occupation tax for selling merchandise in the limits of the City of Selma, and the question in the present case is not in the remotest degree involved.

The question raised in Boesch v. Byrom, 37 Texas Civ. App., 35, 83 S. W., 18, relates solely to the authority of school districts to extend their boundaries, the election of school trustees, and the authority of de facto officers or school trustees to order the election to determine the question of a tax levy. We can gather nothing from that case to assist in determining the question we are seeking to solve.

A careful review of all the authorities to which we have been cited reveals nothing that would demand or authorize this court to place a different construction upon section 3, article 7, of the Constitution than that where an independent school district votes a special tax pursuant to the authority conferred by said section of the Constitution and afterwards extends the boundaries of such district, the existing special tax so authorized cannot be levied and collected against the property in such extension until such assessment is authorized by a vote of the qualified tax-paying voters of the district as extended.

It follows from the construction here placed upon the provision of the Constitution in question, the judgments of the District Court and Court of Civil Appeals will have to be reversed and rendered in so far as they hold the tax in question valid. It is therefore ordered by this court that the judgments of the District Court and the Court of Civil Appeals be affirmed in so far as they sustain the validity of the Celeste Independent School District as extended by the petition of May 24, 1907, and, in so far as they sustain the validity of the tax complained of, said judgments are reversed and judgment is here rendered for plaintiff in error enjoining the collection of said taxes as by them prayed for.

*Judgment affirmed in part and reversed and rendered in part.*